# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

VALERIE PALMIERI,  )
)
          Plaintiff,  )
)
v.  )
)
INTERVET, INC. D/B/A MERCK  )
ANIMAL HEALTH  )
)
          Defendant.  )
)
)
_____  )

Civil Action No. 2:19-CV-22024-JMV-JBC

Honorable John M. Vazquez, U.S.D.J.
Honorable James B. Clark, III, U.S.M.J.

_____

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

_____

**McCARTER & ENGLISH, LLP**

Natalie H. Watson, Esq.
Theresa A. Dill, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
nwatson@mccarter.com
tdill@mccarter.com

**McCARTER & ENGLISH, LLP**

Kristofor T. Henning, Esq.
1600 Market Street, Suite 3900
Philadelphia, PA 19103
khenning@mccarter.com

**McCARTER & ENGLISH, LLP**

Michael P. Kelly, Esq. (*pro hac vice* application forthcoming)
Renaissance Centre
405 N. King St., 8th Floor
Wilmington, DE 19801
mkelly@mccarter.com

**HUGHES HUBBARD & REED LLP**

Charles W. Cohen, Esq.
James C. Fitzpatrick, Esq. (*pro hac vice* application forthcoming)
One Battery Park Plaza
New York, NY 10004
charles.cohen@hugheshubbard.com
james.fitzpatrick@hugheshubbard.com

*Attorneys for Defendant Intervet, Inc. d/b/a Merck Animal Health*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF COMPLAINT ........................................................................... 3

III.   LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 6

A.     THE COURT SHOULD DISMISS THE ENTIRE COMPLAINT. ..................... 6

    1.     Intervet Disclosed Any Alleged Risk of Seizures...................................... 7

    2.     Plaintiff Does Not Claim Exposure To Any Materials Containing Any Alleged Misrepresentations/Omissions............................................... 9

B.     THE COURT SHOULD DISMISS COUNT I (CFA) AND COUNT IV (UNJUST ENRICHMENT) BECAUSE THEY ARE SUBSUMED BY THE PLA. ............................................................................................................ 11

C.     THE COURT SHOULD DISMISS COUNT I (CFA) FOR TWO ADDITIONAL REASONS. .............................................................................. 14

    1.     Plaintiff Has Not Alleged That, At The Time Of Her Purchase, Intervet Knew More Than It Disclosed About Any Alleged Risk Of Seizures Associated With Bravecto®. ..................................................... 14

    2.     Plaintiff Has Not Alleged An Actionable Ascertainable Loss................. 16

D.     THE COURT SHOULD DISMISS COUNT II (BREACH OF EXPRESS WARRANTY) FOR THE ADDITIONAL REASON THAT ANY STATEMENT THAT BRAVECTO IS SAFE AND EFFECTIVE CANNOT SUPPORT SUCH A CLAIM UNDER NEW JERSEY LAW .......... 19

E.     THE COURT SHOULD DISMISS COUNT III (PLA) FOR THE ADDITIONAL REASON THAT NEW JERSEY LAW PRESUMES INTERVET'S WARNINGS ABOUT BRAVECTO ARE ADEQUATE BECAUSE THE FDA APPROVED THEM. ..................................................... 21

F.     THE COURT SHOULD DISMISS COUNT IV (UNJUST ENRICHMENT) FOR THREE ADDITIONAL REASONS. ............................ 22

    1.     New Jersey Law Does Not Permit An Unjust Enrichment Claim That Sounds In Tort. ............................................................................... 23

i

2.      Plaintiff Has Not Alleged A Direct Relationship With Intervet. ............. 24

3.      Plaintiff Does Not Allege That She Expected Remuneration From
        Intervet At The Time Of Her Bravecto® Purchase. ................................ 24

G.      THE COURT SHOULD DISMISS COUNT V (MMWA) FOR     THREE
        ADDITIONAL REASONS. ................................................................................. 25

        1.      Bravecto® Is Not A "Consumer Product." ................................................ 25

        2.      Federal Law Governs Intervet's Alleged Warranty. ................................ 27

        3.      Plaintiff Has Not Alleged That Intervet Provided A
                "Written     Warranty"     Within     The     Meaning     Of     The
                MWMA ................................................................................................. 27

H.      THE COURT SHOULD DISMISS COUNT VI (CUTPA) FOR   THREE
        ADDITIONAL REASONS. ................................................................................. 29

        1.      Plaintiff's CUTPA Claim Is Time Barred. ............................................... 29

        2.      Plaintiff's CUTPA Claim Is Subsumed By The CPLA. .......................... 31

        3.      CUTPA Does Not Apply To Intervet's Alleged Misconduct. ................. 33

I.      ALTERNATIVELY, THE COURT SHOULD DISMISS   PLAINTIFF'S
        REQUEST FOR INJUNCTIVE  RELIEF. ......................................................... 35

        1.      Plaintiff Does Not Face A Risk Of Future Injury. ................................... 35

        2.      Plaintiff's Request For Injunctive Relief Is Moot. ................................... 36

V.      CONCLUSION ................................................................................................. 37

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alban v. BMW of N. Am., LLC*,
   2011 WL 900114 (D.N.J. Mar. 15, 2011) .......................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................5, 6, 10

*In re Avandia Mktg. Sales & Prods. Liab. Litig.*,
   588 Fed. Appx. 171 (3d Cir. 2014)..............................................................8, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................5, 6, 10

*Bistrian v. Levi*,
   696 F.3d 352 (3d Cir. 2012) ...................................................................6

*Boyko v. Am. Int'l Group, Inc.*,
   2009 WL 5194431 (D.N.J. Dec. 23, 2009).........................................................14

*Bullock v. Borough of Roselle*,
   2018 WL 4179481 (D.N.J. Aug. 31, 2018) ........................................................29

*Coda v. Constellation Energy Power Choice, LLC*,
   409 F. Supp. 3d 296 ...................................................................................6

*Donachy v. Intrawest U.S. Holdings, Inc.*,
   2012 WL 869007 (D.N.J. Mar. 14, 2012) ...............................................6, 23, 24

*Durso v. Samsung Elecs. Am., Inc.*,
   2013 WL 5947005 (D.N.J. Nov. 6, 2013) ........................................................18

*Fid. and Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*,
   936 F. Supp. 2d 441 (D.N.J. 2013)...................................................................13

*Fraser v. Wyeth, Inc.*,
   857 F. Supp. 2d 244 (D. Conn. 2012)...............................................................19

*Glass v. BMW of North Am., LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011).........................................................14

*Gnazzo v. G.D. Searle & Co.*,
  1990 WL 320243 (D. Conn. Nov. 29, 1990) ......................................................30

*Goldsmith v. Mentor Corp.*,
  913 F. Supp. 56 (D.N.H. 1995) ...........................................................................26

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 Fed. Appx. 94 (3d Cir. 2013) ........................................................................16

*Green v. Green Mt. Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. ) ...............................................................................18, 23

*Greisberg v. Boston Scientific Corp.*,
  2020 WL 278648 (D.N.J. Jan. 17, 2020) .......................................................13, 21

*Hassler v. Sovereign Bank*,
  644 F. Supp. 2d 509 (D.N.J. Jun. 12, 2009) ........................................................8

*Hemy v. Perdue Farms, Inc.*,
  2011 WL 6002463 (D.N.J. Nov. 30, 2011) ..........................................................9

*Hughes v. Panasonic Consumer Electronics, Co.*,
  2011 WL 2976839 (D.N.J. Jul. 21, 2011) ...........................................17, 23, 24

*Jasper v. MusclePharm Corp.*,
  2015 WL 2375945 (D. Colo. April 9, 2015) .......................................................27

*In re: Johnson & Johnson Talcum Powder Prods. Marketing, Sales Practices and Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) ...............................................................................34

*Jurista v. Amerinox Processing, Inc.*,
  492 B.R. 707 (D.N.J. Mar. 28, 2013) ....................................................22, 23, 24

*Kemp v. Pfizer, Inc.*,
  835 F. Supp. 1015 (E.D. Mich. 1993) .................................................................26

*L.Y. v. Bayonne Bd. Of Educ.*,
  384 Fed. Appx. 58 (3rd Cir. June 10, 2010) ......................................................25

*Larobina v. Wells Fargo Bank, N.A.*,
  2012 WL 1032953 (D. Conn. Mar. 27, 2012) ......................................................9

iv

*Lewis v. Casey*,
   518 U.S. 343 (1996).................................................................................10, 17

*In re Minnesota Breast Implant Litigation*,
   36 F. Supp. 2d 863 (D. Minn. 1998)...................................................26

*Mladenov v. Wegmans Food Mkts., Inc.*,
   124 F. Supp. 3d 360 ...............................................................................18

*Nobile v. Ford Motor Co.*,
   2011 WL 900119 (D.N.J. Mar. 14, 2011) .........................................24

*Pappaldaro v. Combat Sports, Inc.*,
   2011 WL 6756949 (D.N.J. Dec. 23, 2011).........................................22

*Payne v. Biomet, Inc.*,
   2019 WL 2866068 (D.N.J. July 2, 2019) ....................................10, 12

*Peruto v. TimerTech Ltd.*,
   125 F. Supp. 3d 447 ...............................................................................18

*Priano-Keyser v. Apple, Inc.*,
   2019 WL 7288941 (D.N.J. Dec. 30, 2019).........................................16

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) .................................................................30

*Schraeder v. Demilec (USA), LLC*,
   2013 WL 3654093 (D.N.J. July 12, 2013) .........................................13

*Sheridan v. NGK Metals Corp.*,
   609 F.3d 239 (3d Cir. 2010) ...................................................................5

*Solo v. Bed Bath & Beyond, Inc.*,
   2007 WL 1237825 (D.N.J. April 26, 2007).........................................16

*Stewart v. Smart Balance, Inc.*,
   2012 WL 4168584 (D.N.J. June 26, 2012)....................................18, 27

*Sun Chemical Corp. v. Fike Corp.*,
   2017 WL 6316644 (D.N.J. Dec. 11, 2017).............................10, 12, 17

*Swift v. Pandey*,
   2014 WL 1366436 (D.N.J. Apr. 7, 2014)...................................................22, 24

*Town of Sprague v. Mapei Corp.*,
   2012 WL 1900120 (D. Conn. May 24, 2012) .............................................30, 31

*Waldron v. Jos. A. Bank Clothiers, Inc.*,
   2013 WL 12131719 (D.N.J. Jan. 28, 2013)........................................................16

*Wheelabrator Envtl. Sys., Inc. v. Galante*,
   2000 WL 863029 (D. Conn. Mar. 31, 2000) .....................................................32

*Yurchak v. Atkinson & Mullen Travel, Inc.*,
   207 F. App'x 181 (3d Cir. 2006) ..........................................................................6

**STATE CASES**

*Abrahams v. Young & Rubicam*,
   240 Conn. 300 (1997) ........................................................................................10

*Asatov v. D & L Auto Body & Towing, LLC*,
   2019 WL 1932575 (Conn. Super. Ct. Apr. 3, 2019) ..........................................29

*Avon Meadow Condo. Ass'n, Inc. v. Bank of Boston Connecticut*,
   50 Conn. App. 688 (1998) ..................................................................................28

*Blass v. Rite Aid of Connecticut, Inc.*,
   51 Conn. Supp. 622 (Conn. Super. Ct. 2009) .....................................................33

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (Ct. App. 1993)..................................................................35

*Convention of Episcopal Diocese of Connecticut v. Minwax Co.*,
   1994 WL 149271 (Conn. Super. Ct. Apr. 4, 1994) ......................................30, 32

*Dibello v. C.B. Fleet Holding Co.*,
   2007 WL 2756374 (Conn. Super. Ct. Aug. 31, 2007).........................................31

*Fichera v. Mine Hill Corp.*,
   207 Conn. 204 (1988) ...................................................................................28, 29

*Harabes v. The Bakery, Inc.*,
    348 N.J. Super. 366 (Law Div. 2011)....................................................11

*Kanter v. Warner-Lambert Co.*,
    99 Cal. App. 4th 780 (2002) .....................................................25, 27

*Kearney v. Thibault*,
    2009 WL 2357999 (Conn. Super. Ct. June 16, 2009) ........................30

*Provost-Daar v. Merz N. Am., Inc.*,
    2014 WL 1193481 (Conn. Super. Ct. Feb. 24, 2014)....................30, 31

*Salko Farm & Stable, LLC v. Baus*,
    2007 WL 1976241 (Conn. Super. Ct. May 24, 2007) .........................31

*Sinclair v. Merck & Co.*,
    195 N.J. 51 (2008) ...............................................................11, 12

*Thiedemann v. Mercedes-Benz U.S.A., LLC*,
    183 N.J. 234 (2005) ...............................................................16

## FEDERAL STATUTES

15 U.S.C. § 2052(a)(5)(H) .........................................................25

15 U.S.C. § 2301(1) ................................................................25

15 U.S.C. § 2301(6)(A)............................................................27

15 U.S.C. § 2311(d) ...............................................................26

21 U.S.C. 321(g)(1)(B)&(C).......................................................26

21 U.S.C. § 360(b) ................................................................26

21 U.S.C. § 393, *et seq.*..........................................................20

## STATE STATUTES

Conn. Gen. Stat. § 42-110(c) (a)(1) ...........................................32, 33

Conn Gen. Stat. § 42-110g.........................................................10

Conn. Gen. Stat. § 42-110g(f) ........................................................................28, 29

General Statutes § 22-350 .....................................................................................31

N.J.S.A. 2A:58C-1b(3) ...........................................................................................11

N.J.S.A. 2A:58C-4 ..............................................................................................9, 20

**RULES**

Fed. R. Civ. P. 9(b) ..............................................................................................6, 10

Fed. R. Civ. P. 12(b)(1)...........................................................................................30

Fed. R. Civ. P. 12(b)(6).....................................................................................2, 5, 29

Rule 8 ......................................................................................................................10

**REGULATIONS**

21 C.F.R. §§ 201.105, 514.1–514.8 .......................................................................26

21 C.F.R. § 514.80(b)(5)(ii)....................................................................................26

# I.  <u>INTRODUCTION</u>

Bravecto® is a flea and tick medicine for dogs and cats that Defendant Intervet Inc. markets.  In its chewable form,[1] Bravecto has been approved as safe and effective by the Food & Drug Administration (FDA) since May 2014.  It is part of a class of similar FDA-approved medicines called isoxazolines that includes numerous other medicines from other pharmaceutical companies.

Plaintiff, Valerie Palmieri, alleges that she purchased a single Bravecto chewable tablet for her dog from a veterinarian on November 13, 2016.  She claims that she gave her dog the tablet and that her dog then suffered a seizure.  According to Plaintiff, Intervet failed to adequately disclose an alleged seizure risk associated with Bravecto and Intervet is, therefore, liable to her for a range of damages, including veterinarian bills and either all or some portion of her Bravecto purchase price.

Plaintiff's Complaint asserts six causes of action:  (1) violation of the New Jersey Consumer Fraud Act ("CFA"); (2) breach of express warranty under New Jersey law; (3) violation of the New Jersey Products Liability Act ("PLA"); (4) unjust enrichment under New Jersey law; (5) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (6) violation of the Connecticut Unfair Trade

---

[1] All references to "Bravecto" in this motion are references to the chewable form of the product, since that is what Plaintiff alleges she purchased.  Bravecto is also manufactured and sold as a topical solution for dogs and cats.

1

Practices Act ("CUTPA").  In this motion, Intervet demonstrates why each one fails to state a plausible claim against it and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Two defects in the Complaint permeate and doom all of Plaintiff's claims.

***First***, the Complaint reveals that Intervet did, in fact, adequately disclose and describe any alleged risk of seizures.  According to Plaintiff's own allegations, the relevant information to disclose is the incidence of seizures and other neurological complaints in the pre-approval clinical trials of the relevant medicine. But Plaintiff acknowledges that Intervet disclosed just that with Bravecto - and makes no allegation that the disclosure was incorrect.

***Second***, even though every one of Plaintiff's claims is based on alleged misrepresentations/omissions by Intervet about Bravecto, Plaintiff does not allege that she even read or was exposed to any materials containing those alleged misrepresentations/omissions before her purchase.  Instead, Plaintiff alleges only that she bought Bravecto from a veterinarian without any allegation that she first saw or was exposed to any representation from Intervet.

These legal defects alone are fatal to all six of Plaintiff's causes of action, but each of Plaintiff's claims suffers from additional flaws.

One of the additional flaws mandates the dismissal of Plaintiff's CFA, unjust enrichment and CUTPA claims (Counts I, IV & VI).  The PLA and its Connecticut

2

counterpart subsume these straightforward product liability claims alleging property damage from an allegedly defective product.

Each individual claim in the Complaint also suffers from additional flaws that require dismissal, including (among others): (1) Plaintiff's failure/inability to allege with particularity in her CFA claim (Count I) that Intervet knew anything more about an alleged risk of seizures with Bravecto at the time of Plaintiff's purchase than it had already disclosed; (2) settled New Jersey law that precludes a breach of express warranty and, therefore, MMWA claim (Counts II & V) based on any statement that an FDA-approved medicine like Bravecto is "safe and effective;" (3) settled New Jersey law that precludes an unjust enrichment claim (Count IV) sounding in tort; and (4) the fact that her CUTPA claim (Count VI) is untimely under that statute's three-year limitations period.

As discussed in more detail below, these and other critical failings warrant dismissal of Plaintiff's Complaint in its entirety.

## II.   <u>SUMMARY OF COMPLAINT</u>

Intervet, a Merck & Co. Inc. subsidiary, markets Bravecto®, a flea and tick medication that is available in multiple forms, including chewable tablets for dogs. Compl. ¶¶ 1, 16.  Bravecto is one of several medicines in what is called the isoxazoline class, meaning products with active ingredients that are in the same chemical family but, in this case, which include differences among their molecules,

chemical compositions and operation.  ¶¶ 24 (p. 10); 27.  The FDA approved the sale and marketing of Bravecto in May 2014 and it remains FDA-approved and available today.  ¶¶ 1, 20.

When the FDA approved Bravecto, it approved a label that accurately stated: (1) "[f]ederal (USA) law restricts this drug to use by or on the order of a licensed veterinarian"; (2) "**[a]dverse Reactions:** In a well-controlled U.S. field study, which included 294 dogs (224 dogs were administered Bravecto every 12 weeks and 70 dogs were administered an oral active control every 4 weeks and were provided with a tick collar); there were no serious adverse reactions. . . . The most frequently reported adverse reaction in dogs in the Bravecto and active control groups was vomiting;" and (3) "[o]ne adult treated dog suffered a seizure during the course of the study (46 days after the second treatment)."  ¶ 24.

On September 20, 2018, the FDA announced that, as part of "its routine post-marketing activities," it was working with pharmaceutical companies with products in the isoxazoline class on what is called "class labeling."  ¶ 27.  As the FDA indicated, it wanted the labels for isoxazoline class products to include certain language regarding seizures.  ¶ 27.  To that end, and as Plaintiff concedes, Intervet now discloses on the Bravecto label, *inter alia*, that: (1) Bravecto "is a member of the isoxazoline class.  This class has been associated with neurologic adverse reactions including tremors, ataxia, and seizures;" and (2) "[s]eizures have

4

been reported in dogs receiving isoxazoline class drugs, even in dogs without a history of seizures."  ¶¶ 34-35.

Plaintiff alleges that she bought a single Bravecto chewable tablet for her dog from a veterinarian in November 2016.  ¶¶ 15, 41.  Plaintiff alleges that her dog was then diagnosed as having a seizure after treatment with Bravecto.  ¶¶ 42-43.  On December 27, 2019, Plaintiff filed this putative nationwide class action lawsuit in which she seeks to represent a sweeping class comprised of any "purchaser[] or user[] of Bravecto products in the United States" from the FDA's first approval of  Bravecto in 2014 until the present - regardless of whether the putative class member's pet ever experienced a seizure or any other adverse event. ¶ 60.

### III.   <u>LEGAL STANDARD</u>

A complaint must be dismissed on a Fed. R. Civ. P. 12(b)(6) motion if it does not allege sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court is not bound to assume the truth of legal conclusions merely because they are stated in the form of factual allegations.

5

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *see Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (holding that, in deciding a motion to dismiss, a court should "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth").   A court need not credit either "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  *Yurchak v. Atkinson & Mullen Travel, Inc.*, 207 F. App'x 181, 183 (3d Cir. 2006) (citing *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).

Plaintiff's CFA and CUTPA claims are also subject to the "particularity" standard found in Fed. R. Civ. P. 9(b).  *See, e.g., Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301 (D.N.J. 2019)(Vasquez, J.); *Donachy v. Intrawest U.S. Holdings, Inc.*, 2012 WL 869007, at *4 (D.N.J. Mar. 14, 2012) (applying Rule 9(b) to CUTPA claim). As a result, Plaintiff "must allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *See Coda*, 409 F. Supp. 3d at 301 (internal quotation/citation omitted); *see also Donachy*, 2012 WL 869007, at *4.

## IV.   ARGUMENT

### A.   THE COURT SHOULD DISMISS THE ENTIRE COMPLAINT.

Plaintiff's entire Complaint fails for two reasons that are common to all of her claims: (1) all of Plaintiff's claims are based on Intervet's disclosures, but

6

Intervet made appropriate disclosures and disclosed what even Plaintiff alleges it should have regarding any alleged connection between Bravecto® and seizures; and (2) Plaintiff does not allege that she even saw any of Intervet's materials allegedly containing misrepresentations/omissions about Bravecto.

### 1.  Intervet Disclosed Any Alleged Risk Of Seizures.

Before Plaintiff's only Bravecto purchase, Intervet disclosed that in the U.S. field study conducted to obtain FDA approval for Bravecto®, out of 224 dogs treated with Bravecto, "[o]ne adult treated dog suffered a seizure during the course of the study (46 days after the second treatment)."  Compl. ¶ 24 (p. 11).  Plaintiff does not allege that the results of the relevant study were not, in fact, as Intervet described.  In fact, Plaintiff does not allege that this representation is inaccurate in any way.

Even under Plaintiff's own self-serving framework for determining what type of disclosure is adequate, her Complaint still fails to state a claim.  According to Plaintiff, one Intervet competitor who sells a flea and tick medication in the isoxazoline class adequately disclosed an alleged risk of "neurological adverse reactions" by describing the results of studies it had conducted before FDA approval.  Compl. ¶ 32 ("NexGard discloses on its label and website this risk, stating in part:  In the U.S. field study, one dog with a history of seizures experienced a seizure on the same day after receiving the first dose and on the

7

same day after receiving the second dose . . . .").  Similarly, again according to Plaintiff, another competitor sufficiently disclosed alleged "risks of neurological adverse reactions" by indicating that "during its studies a dog experienced ataxia and six of sixteen puppies given three times and five times the recommended dose of Simparica had a variety of neurologic signs."  Compl. ¶ 33.

Intervet's label stated the results of its studies on Bravecto and was approved by the FDA.  And, as acknowledged by Plaintiff, a disclosure that describes the neurological adverse event results of relevant studies is sufficient.  Because that is exactly what Plaintiff correctly alleges Intervet disclosed, Plaintiff's claims must fail.  There is absolutely no functional difference between Intervet's disclosure and the disclosures Plaintiff concedes were sufficient for different isoxazoline products.  Simply put, Plaintiff acknowledges in her Complaint what she must, that Intervet's FDA-approved label made adequate disclosures using Plaintiff's own framework.  *See, e.g., Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 517 (D.N.J. Jun. 12, 2009)(dismissing CFA claim where defendant disclosed "the very information that Plaintiff[] allege[s] was misrepresented") (internal citations omitted);[2] *In re Avandia Mktg. Sales & Prods. Liab. Litig.*, 588 Fed. Appx. 171,

---

[2] Intervet does not concede that New Jersey law applies to Plaintiff's claims and reserves the right to demonstrate otherwise in the future, if necessary. Nevertheless, Intervet has demonstrated why Plaintiff's claims fail even under the law she has chosen.

178 (3d Cir. 2014)(dismissing breach of express warranty claim because defendant disclosed pertinent risks); N.J.S.A. 2A:58C-4 (for PLA claim, indicating that "[t]he manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction . . ."); *Larobina v. Wells Fargo Bank, N.A.*, 2012 WL 1032953, at *8 (D. Conn. Mar. 27, 2012)(dismissing CUTPA claim where defendant disclosed relevant information).

### 2.     <u>Plaintiff Does Not Claim Exposure To Any Materials Containing Any Alleged Misrepresentations/Omissions.</u>

Plaintiff alleges that Intervet made misrepresentations/omissions about Bravecto in two sources: (1) its label and packaging information and (2) a website. Compl. ¶¶ 18, 23-24.  Nowhere in the Complaint, however, does Plaintiff allege that she actually saw, read or was exposed to this information before her Bravecto® purchase (even though that information -- if it exists -- is squarely within her control).  Plaintiff instead merely alleges that she bought Bravecto from a veterinarian without any allegation that she first received any representation/omission about Bravecto from Intervet.   Compl. ¶ 41.   Where Plaintiff cannot even allege exposure to the sources of Intervet's supposed misrepresentations/omissions, all of her claims fail as a matter of law.[3]   *See, e.g.,*

---

[3] Plaintiff's conclusory allegation that she "and the other class members were exposed to and saw Bravecto's labeling and/or other deceptive marketing claims"

*Sun Chemical Corp. v. Fike Corp.*, No. 13-4069, 2017 WL 6316644, at *8 (D.N.J. Dec. 11, 2017)(Vasquez, J.)("Thus, while Plaintiff is correct that an affirmative statement does not have to be relied on by a buyer for purposes of the CFA, Plaintiff has cited no cases indicating that Plaintiff can be unaware of such statement and nevertheless prevail. To the contrary, the statement still has to be material and induce the purchase."); *Payne v. Biomet, Inc.*, 2019 WL 2866068, at *4 (D.N.J. July 2, 2019)(Vasquez, J.)(dismissing claim for breach of express warranty and explaining that "[a]s to the 'basis of the bargain' element, the plaintiff must allege that she 'read, heard, saw or knew of the advertisement containing the [express warranty]' when choosing to use the product");[4] *see also id.* at *7; Conn Gen. Stat. § 42-110g (requiring CUTPA plaintiff to show "ascertainable loss . . . as a result of" unlawful conduct); *Abrahams v. Young & Rubicam*, 240 Conn. 300, 306 (1997)("The language 'as a result of' requires a

---

about Bravecto "[d]uring the time period relevant to this action" is insufficient. Compl. ¶ 25. First, the relevant question is whether Plaintiff – not some unidentified putative class member – was exposed to Intervet's statements. *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *11, *24 (D.N.J. Nov. 30, 2011); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996). Second, Plaintiff must have been exposed to Intervet's statements before her purchase, not at some unspecified point in time that she considers "relevant" to her claims. Plaintiff's allegations are deficient under both the Rule 8 standard explained in *Twombly* and *Iqbal* and the Rule 9(b) "particularity" standard applicable to her CFA and CUTPA claims.

[4] Without a viable claim for breach of express warranty, no MMWA claim can stand. *See* § IV(G), *infra*.

showing that the prohibited act was the proximate cause of a harm to the plaintiff.").

The Court should dismiss Plaintiff's entire Complaint for any or all of the reasons described above without the need for a claim by claim analysis. Nevertheless, each of Plaintiff's claims fails for additional reasons described below.

**B.   THE COURT SHOULD DISMISS COUNT I (CFA) AND COUNT IV (UNJUST ENRICHMENT) BECAUSE THEY ARE SUBSUMED BY THE PLA.**

As the New Jersey Supreme Court has held, a claim whose heart "is the potential for harm caused by [a] drug" is a products liability claim that is subsumed by the PLA. *See Sinclair v. Merck & Co.*, 195 N.J. 51, 62 (2008). To that end, the New Jersey "[l]egislature expressly provided in the PLA that claims for 'harm caused by a product' are governed by the PLA 'irrespective of the theory underlying the claim. . . ." *See Sinclair v. Merck & Co.*, 195 N.J. 51, 62 (2008)(explaining that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action related to harms caused by consumer and other products")(internal quotation omitted); N.J.S.A. 2A:58C-1b(3). "Harm" includes, *inter alia*, "physical damage

to property, other than to the product itself. . . ." *See id.*[5] Thus, in light of *Sinclair*, courts have dismissed CFA and unjust enrichment claims as subsumed by the PLA where they allege property damage from a product.[6] *See Sinclair*, 195 N.J. at 66 ("The heart of plaintiffs' case is the potential for harm caused by Merck's drug. It [plaintiffs' CFA claim] is obviously a product liability claim."); *Sun Chemical Corp. v. Fike Corp.*, 2017 WL 6316644, at *12-13 (D.N.J. Dec. 11, 2017)(Vasquez, J.)(dismissing CFA claim as subsumed by PLA and explaining that "[e]ven though the CFA itself has an expansive reach, it will nevertheless yield to the PLA when the essential nature of a claim sounds in products liability" and "[c]ourts have made clear that a plaintiff may not avoid the requirements of the PLA by artfully crafting its claims under the CFA");[7] *Payne v. Biomet, Inc.*, No.

---

[5] According to Plaintiff and New Jersey law, harm to pets and animals is considered property damage. *See, e.g.,* Compl. ¶ 96 (alleging that Bravecto harmed "animals, constituting property damage to Plaintiff"); *Harabes v. The Bakery, Inc.*, 348 N.J. Super. 366, 369 (Law Div. 2011) ("[P]ets are usually classified as personal property").

[6] Count VI of Plaintiff's Complaint – her CUTPA claim – is also subsumed by a products liability act. However, because it is the Connecticut Products Liability Act (CPLA), not the PLA, that subsumes that claim, Intervet has addressed it separately. *See* § IV(H)(2), *infra*.

[7] The plaintiff in *Sun Chemical* appealed at least a portion of this Court's decision, and the New Jersey Supreme Court has accepted the following certified question from the Third Circuit Court of Appeals: "Can a Consumer Fraud Act claim be based, in part or exclusively, on a claim that also might be actionable under the Products Liability Act?" Intervet does not believe that the answer to that question will impact this matter. The present matter is controlled by *Sinclair* and other cases cited above whereas, according to the Third Circuit, the question put to the

18-13396, 2019 WL 2866068, at *5 (D.N.J. July 2, 2019)(Vasquez, J)(dismissing CFA claim as subsumed by PLA); *Schraeder v. Demilec (USA), LLC*, 2013 WL 3654093, at *4 (D.N.J. July 12, 2013)(dismissing CFA and unjust enrichment claims as subsumed by PLA); *Greisberg v. Boston Scientific Corp.*, 2020 WL 278648, at *4 (D.N.J. Jan. 17, 2020)(Vasquez, J.).

Here, Plaintiff's CFA and unjust enrichment claims alleging that Bravecto chewable tablets caused harm to her dog fit squarely within the scope of the PLA. The Complaint itself confirms this. Plaintiff's PLA claim incorporates the allegations from her CFA claim – and likewise, Plaintiff's unjust enrichment claim expressly incorporates the allegations from her PLA claim. Compl. ¶¶ 69-79; 90-97; 98-105. The very existence of Plaintiff's PLA claim in her Complaint is clear evidence that she views her lawsuit as within its scope – a result confirmed by the CFA, PLA and unjust enrichment claims' incorporation of the same alleged facts.[8]

---

New Jersey Supreme Court is relevant to cases that are not answered by *Sinclair*. *See* (https://njcourts.gov/attorneys/assets/opinions/webcast/a_89_18.pdf) at 8-9 ("From *Lead Paint* and *Sinclair* we discern the PLA bars claims under the CFA that are based on a seller's non-disclosure of a product's risk of causing injury to persons or property. But that lesson does not squarely address Sun's CFA claim here . . . .").

[8] The Complaint does not include a count for breach of the implied warranty of merchantability and, therefore, there is no need to address such a cause of action. Nevertheless, because Plaintiff's MMWA claim makes reference to such an implied warranty (Compl. ¶ 116), any such claim would also be subsumed by the PLA. *See Fid. and Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F. Supp. 2d 441, 447 (D.N.J. 2013).

The thrust of Plaintiff's Complaint (including her CFA and unjust enrichment claims) is that Intervet failed to provide adequate warnings about Bravecto, a product Plaintiff alleges is defective and unsafe. Compl. ¶¶ 3, 4, 8, 9 (alleging Bravecto is "unreasonably dangerous and defective product"); 22, 29, 90-97; 69-79; 98-105. As a result of this alleged product defect, according to Plaintiff, she suffered property damage in the form of injury to her dog. Compl. ¶¶ 41-46. Plaintiff's CFA and unjust enrichment claims are, therefore, classic products liability claims and they should be dismissed because they are subsumed by the PLA.

## C.   THE COURT SHOULD DISMISS COUNT I (CFA) FOR TWO ADDITIONAL REASONS.

In addition to the failures described above, Plaintiff's CFA claim also fails for two additional reasons: (1) Plaintiff has not alleged that Intervet knowingly concealed any alleged risk of seizures; and (2) she has not alleged any actionable ascertainable loss.

### 1.   Plaintiff Has Not Alleged That, At The Time Of Her Purchase, Intervet Knew More Than It Disclosed About Any Alleged Risk Of Seizures Associated With Bravecto®.

To sustain a claim under the CFA, a plaintiff bears the burden of pleading and proving: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the unlawful conduct and the

ascertainable loss." *See Boyko v. Am. Int'l Group, Inc.*, 2009 WL 5194431, at *3 (D.N.J. Dec. 23, 2009)(quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (N.J. 2009)).   Where, like here, a plaintiff claims that the defendant failed to disclose a product's potential for harm, she must show that the defendant "knowingly concealed" the allegedly withheld information.   *Glass v. BMW of North Am., LLC*, 2011 WL 6887721, at *9-10 (D.N.J. Dec. 29, 2011).   Stated differently, the plaintiff must allege that the defendant knew of the allegedly omitted information at the time of her purchase and failed to disclose it.   *Alban v. BMW of N. Am., LLC*, 2011 WL 900114, at *10 (D.N.J. Mar. 15, 2011).   Plaintiff has failed to do so.

At the time of Plaintiff's November 13, 2016 Bravecto purchase, Intervet had disclosed that "[o]ne adult treated dog suffered a seizure during the course of the study (46 days after the second treatment)."   Compl. ¶ 24.   Plaintiff does not allege any facts plausibly showing that, at that time, Intervet knew more than that about any alleged connection between Bravecto and seizures.   Plaintiff alleges that Intervet "likely" received reports of adverse events associated with Bravecto and speculates that some of those "likely" reports "relate to neurological symptoms," (*Id.* at ¶ 7), but she offers nothing about the content of these "likely" reports, if they happened at all, or their dates to show whether or not they pre-dated her

15

purchase.[9]  Similarly, any allegations about other isoxazoline class products are not about Bravecto and, therefore, could not have given Intervet knowledge of any facts regarding Bravecto.  *Id.* at ¶¶ 26, 32.  Finally, even assuming for the moment that they could otherwise have put Intervet on notice of any fact(s) relevant to Plaintiff's claim, the September 20, 2018 FDA announcement and the October 22, 2018 article referenced in Plaintiff's Complaint post-date her purchase.  *Id.* at ¶¶ 27, 30.  As a result, Plaintiff has failed to state a plausible CFA claim.  *See e.g.*, *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 104-05 (3d Cir. 2013)(dismissing CFA claim for failure to allege defendant's knowledge of allegedly omitted information at time of plaintiff's purchase); *Priano-Keyser v. Apple, Inc.*, 2019 WL 7288941 *7 (D.N.J. Dec. 30, 2019)(same).

## 2.  Plaintiff Has Not Alleged An Actionable Ascertainable Loss.

In order to sustain a CFA claim, a plaintiff must allege an "ascertainable loss."  *See Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. April 26, 2007); *Thiedemann v. Mercedes-Benz U.S.A., LLC*, 183 N.J. 234, 248 (2005);

---

[9] Beyond her other failures, Plaintiff does not explain how any such reports would be probative to begin with, given the limitations that the FDA states are inherent in adverse event reports.  *See* https://www.fda.gov/drugs/surveillance/questions-and-answers-fdas-adverse-event-reporting-system-faers ("Yes, FAERS data does have limitations. First, there is no certainty that the reported event (adverse event or medication error) was due to the product. FDA does not require that a causal relationship between a product and event be proven, and reports do not always contain enough detail to properly evaluate an event.").

*Waldron v. Jos. A. Bank Clothiers, Inc.*, 2013 WL 12131719, at \*4 (D.N.J. Jan. 28, 2013).  Plaintiff claims that she paid veterinary bills she alleges she incurred as a result of her dog's treatment with Bravecto, but that is not all.  Compl. ¶ 75(b). Plaintiff also claims a "loss of the benefit of the bargain" and, apparently in support of that broad allegation, she avers that if Intervet had made a different disclosure, "Plaintiff and the other Class member [sic] would . . . not have purchased Bravecto, *or* would not have paid the price that they paid for it." Compl. ¶¶ 75(a); 39 (emphasis added).

Plaintiff's allegations are insufficient to identify an actionable ascertainable loss.  Initially, Plaintiff must allege her own "ascertainable loss" – she cannot rely on any alleged loss by absent putative class members.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Plaintiff, however, has not alleged whether *she* (i) would not have bought Bravecto for her dog or (ii) "would not have paid the price [she] paid for it."  Compl. ¶ 39.  Without identifying which theory she claims applies to her own purchase, Plaintiff has not alleged an ascertainable loss for her CFA claim.

Moreover, Plaintiff has not alleged an "ascertainable loss" that is "quantifiable or measureable," not merely "hypothetical."  *See Hughes v. Panasonic Consumer Electronics, Co.*, 2011 WL 2976839, at \*15 (D.N.J. Jul. 21, 2011); *Sun Chemical Corp.*, 2017 WL 6316644, at \*6 (citation and internal quotations omitted).  The Complaint makes no attempt to compare either (i) the

17

price Plaintiff paid for Bravecto to the price of any other isoxazoline class product that Plaintiff claims included a sufficient disclosure (accounting for the difference in dosage frequency) or (ii) the price of Bravecto before and after either/both the FDA's September 20, 2018 announcement or the change in Bravecto's label. Compl. ¶¶ 27, 34-35. Indeed, Plaintiff offers no facts to plausibly suggest a change in price after either or both. Without any such facts, Plaintiff has offered, at most, an alleged loss that is "hypothetical." *See, e.g., Hughes*, 2011 WL 2976839, at *16 (dismissing CFA claim and explaining that "Plaintiffs fail to allege how much they paid for their Televisions and how much other comparable Televisions manufactured by Panasonic's competitors cost at the time"); *Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 5947005, at *9 (D.N.J. Nov. 6, 2013)(dismissing CFA claim because, *inter alia*, plaintiffs failed to allege price of competitors' products); *Peruto v. TimerTech Ltd.*, 125 F. Supp. 3d 447, 459 (D.N.J. 2015)(same); *Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. )(same); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *9-10 (D.N.J. June 26, 2012); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 372, 376 (D.N.J. 2015).

**D.**    <u>THE COURT SHOULD DISMISS COUNT II (BREACH OF EXPRESS WARRANTY) FOR THE ADDITIONAL REASON THAT ANY STATEMENT THAT BRAVECTO IS SAFE AND EFFECTIVE CANNOT SUPPORT SUCH A CLAIM UNDER NEW JERSEY LAW.</u>

Beyond the fact that Plaintiff does not allege that she even reviewed any alleged express warranty before her Bravecto® purchase (§ IV(A)(2), *supra*), the Court should dismiss her breach of express warranty claim for the additional reason that any statement from Intervet that Bravecto is "safe" and "effective" in the label or a document referring to the label cannot sustain a claim for breach of express warranty under New Jersey law.

According to Plaintiff, Intervet warranted that Bravecto is "SAFE," with an accompanying representation immediately beneath the word "SAFE:" "FDA approved and proven safe for both dogs and cats for 12 weeks. . . ."  Compl. ¶ 18; *see also id.* at ¶ 86.  That representation cannot support Plaintiff's claim.  *See In re Avandia Mktg. Sales Practice & Prods. Liab. Litig.*, 588 Fed. Appx. 171 (3d Cir. 2014).

In *Avandia*, the Court affirmed the dismissal of a claim for breach of express warranty under New Jersey law and explained:

> Because we conclude the statement that Avandia is "safe and effective" for its intended use contained on its label disclosing contraindications, risk factors, and potential side effects of the drug is not sufficient as a matter of law to state a New Jersey express warranty claim, we will affirm. . . .

19

> Crucially, Avandia's labeling discloses contraindications, risk factors, and possible side effects of the drug, thereby indicating the drug might prove dangerous or ineffective for some people. . . .
>
> These authorities are consistent with the well-established principle that "safe and effective" are relative terms in the pharmaceutical industry – "safe" drugs harm some people and "effective" drugs do not work in every case. . . .
>
> Because GSK disclosed Avandia's contraindications, risk factors, and potential side effects and [the plaintiff] does not allege GSK made unqualified guarantees of safety or effectiveness, [the plaintiff] has failed as a matter of New Jersey law to state an express warranty claim.

*Avandia*, 588 Fed. Appx. at 174, 176, 177, 178; *see also e.g., Fraser v. Wyeth, Inc.*, 857 F. Supp. 2d 244, 257-58 (D. Conn. 2012)(explaining that same analysis applies to claims alleging alleged express warranties outside of label).

The same result follows here.  Intervet disclosed any "contraindications, risk factors and potential side effects" for Bravecto in its FDA-approved label.  Compl. ¶ 24; *see also id.* at ¶ 23.  The Bravecto website also referred and linked to the label.  Compl. ¶ 6 (linking to website).  As a result, Plaintiff does not – and cannot – allege that Intervet made "unqualified guarantees of safety or effectiveness." Therefore, Plaintiff's express warranty claim fails as a matter of New Jersey law.[10]

---

[10]  In fact, Intervet's alleged "misrepresentation" is actually consistent with Bravecto's FDA approval, which pursuant to federal law, requires an FDA determination that the product is, in fact, safe and effective.  *See* 21 U.S.C. § 393, *et seq.*

20

**E.    THE COURT SHOULD DISMISS COUNT III (PLA) FOR THE ADDITIONAL REASON THAT NEW JERSEY LAW PRESUMES INTERVET'S WARNINGS ABOUT BRAVECTO ARE ADEQUATE BECAUSE THE FDA APPROVED THEM.**

In addition to the fact that Intervet made the type of warning that even Plaintiff's own allegations demonstrate is adequate (*see* § IV(A)(1), *supra*), the Court should dismiss Plaintiff's PLA claim because Plaintiff cannot overcome the presumption that Intervet's FDA-approved warning is adequate.

Under the PLA, where – as here – the FDA has approved the warnings and instructions in a medicine's label, "a rebuttable presumption shall arise that the warning or instruction is adequate."  *See* Compl. ¶¶ 1, 24 (p. 11); N.J.S.A. § 2A:58C-4 (explaining that "[i]f the warning or instruction given in connection with a drug . . . has been approved or prescribed by the [FDA] under the [FDCA] . . . a rebuttable presumption shall arise that the warning or instruction is adequate"); *see also Greisberg v. Boston Scientific Corp.*, 2020 WL 278648, at *4 (D.N.J. Jan. 17, 2020)(Vasquez, J.)("In other words, under New Jersey law, defendants who comply with FDA requirements are granted a rebuttable presumption that the labeling is adequate.")(internal citation and quotation omitted).  This presumption significantly impacts Plaintiff's pleading obligations.  As this Court has explained:

> To overcome this presumption, a plaintiff asserting a failure to warn claim based on an inadequate label or instructions has stricter pleading requirements.  A plaintiff must plead specific facts alleging deliberate concealment or nondisclosure of after-

21

acquired knowledge or harmful effects, or manipulation of the post-market regulatory process.

*See Greisberg*, 2020 WL 278648, at *4 (internal citation and quotation omitted)(dismissing PLA claim for failure to plead specific facts that could overcome presumption).

The Complaint is devoid of any allegations that could overcome the presumption that Intervet's warning was adequate – let alone allegations based on the "specific facts" that the law requires.  Compl. ¶¶ 90-97.  The Complaint does not allege that Intervet failed to comply in any way with any FDA requirements.  As explained above, neither does Plaintiff allege what she believes Intervet knew - but concealed - as of the date of her purchase or offer any specific facts alleging deliberate concealment or manipulation of the post-market regulatory process.

### F.     THE COURT SHOULD DISMISS COUNT IV (UNJUST ENRICHMENT) FOR THREE ADDITIONAL REASONS.

In addition to the failures in Plaintiff's unjust enrichment claim described above, her claim fails for three independent and additional reasons.  First, her claim sounds in tort and, therefore, is not actionable under New Jersey law.  Second, she cannot allege facts supporting two elements of an unjust enrichment claim under New Jersey law: (1) a direct relationship with Intervet and (2) an expectation of remuneration from Intervet at the time of her Bravecto® purchase.

### 1.   New Jersey Law Does Not Permit An Unjust Enrichment Claim That Sounds In Tort.

"New Jersey does not recognize unjust enrichment as an independent tort cause of action."  *See Swift v. Pandey*, 2014 WL 1366436, at \*5 (D.N.J. Apr. 7, 2014)(dismissing unjust enrichment claim because "the conduct underlying Plaintiff's unjust enrichment claim sounds in tort"); *Pappaldaro v. Combat Sports, Inc.*, 2011 WL 6756949, at \*11 (D.N.J. Dec. 23, 2011); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. Mar. 28, 2013)(dismissing unjust enrichment claim that sounded in tort).

Plaintiff's unjust enrichment claim sounds in tort.  It repeats the same theory as the Complaint's other claims and alleges that Intervet was unjustly enriched through alleged misrepresentations/omissions about Bravecto.  Compl. ¶¶ 100, 102.  There is no mention in Plaintiff's unjust enrichment claim of any quasi-contractual relationship with Intervet.  Therefore, her unjust enrichment claim fails as a matter of law.[11]

---

[11] Because Plaintiff's unjust enrichment claim restates the same theory as her other claims, it also fails because those other claims likewise fail to state a plausible claim against Intervet.  *See, e.g., Donachy v. Intrawest United States Holdings, Inc.*, 2012 WL 869007, at \*9 (D.N.J. Mar. 14, 2012)("Where, as here, Plaintiffs have failed to aver allegations sufficient to support the underlying conduct on which the unjust enrichment claim is based, there is no injustice and Plaintiffs' unjust enrichment claim must be dismissed.").

### 2.   Plaintiff Has Not Alleged A Direct Relationship With Intervet.

An unjust enrichment claim under New Jersey law has three elements: "(1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *See Jurista*, 492 B.R. at 754.  For the defendant to receive a benefit at the plaintiff's expense, there must be a direct relationship between the two.  *See Hughes*, 2011 WL 2976839, at *27 (D.N.J. Jul 21, 2011)("It is the plaintiff's . . . conferral of a benefit on defendant which forms the basis of an unjust enrichment claim.")(quotation and citation omitted).  Plaintiff, however, alleges that she bought Bravecto from a veterinarian and, therefore, she cannot show the direct relationship with Intervet required to sustain a claim for unjust enrichment.  Compl. ¶ 41; *see also, e.g., Hughes*, 2011 WL 2976839, at *27 (dismissing unjust enrichment claim because plaintiff bought product from third party); *Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011)(dismissing unjust enrichment claim because plaintiff failed to allege direct relationship with defendant).

### 3.   Plaintiff Does Not Allege That She Expected Remuneration From Intervet At The Time Of Her Bravecto® Purchase.

Nowhere in her unjust enrichment claim does Plaintiff allege that she expected remuneration from Intervet at the time of her sole Bravecto purchase.

24

Compl. ¶¶ 98-105.  That is not surprising inasmuch as Plaintiff does not even allege that she knew at that time that Bravecto was an Intervet product.  Plaintiff's unjust enrichment claim fails for this reason as well.  *See, e.g., Hughes*, 2011 WL 2976839, at *27 (dismissing unjust enrichment claim because plaintiffs did not allege that they expected remuneration from defendant at time of purchase); *Jurista*, 492 B.R. at 755 (same); *Swift*, 2014 WL 1366436, at *6 (same); *Donachy*, 2012 WL 869007, at *7 (same).

## G.    THE COURT SHOULD DISMISS COUNT V (MMWA) FOR THREE ADDITIONAL REASONS.

Where a plaintiff's underlying state law warranty claims fail, so must her MMWA claim.  *See, e.g., Nobile v. Ford Motor Co.*, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011)("Because the Court has dismissed the express and implied warranty claims, the Magnuson-Moss Act claims must also be dismissed.").  Therefore, even assuming the MMWA applies, Plaintiff's MMWA claim fails for the same reasons as her breach of express warranty claim (Count II).   *See* §§ IV(A)(2); IV(D), *supra*.  In addition, Plaintiff's MMWA claim  also fails for three independent reasons.

### 1.    Bravecto® Is Not A "Consumer Product."

The MMWA applies only to a "consumer product," which is defined as "any tangible personal property which is distributed in commerce and which is normally

used for personal, family, or household purposes. . . ."  15 U.S.C. § 2301(1).  The MMWA does not expound further on what types of products qualify as "consumer product[s]," but a related federal statute, the Consumer Product Safety Act ("CPSA"), is instructive.   The CPSA also includes "consumer product" as a defined term, and importantly, expressly excludes from that definition "drugs, devices, or cosmetics (as such terms are defined in sections 201(g), (h), and (i) of the Federal Food, Drug, and Cosmetic Act)."  15 U.S.C. § 2052(a)(5)(H).  It is a well-settled canon of statutory interpretation that the same or similar terms should be interpreted consistently across different statutes, especially statutes that address similar subject matter.  *See, e.g., L.Y. v. Bayonne Bd. Of Educ*., 384 Fed. Appx. 58, *62 (3ʳᵈ Cir. June 10, 2010).  Consistent with that rule, and because prescription medications are only available through a physician/veterinarian, numerous courts have correctly concluded that an FDA-approved and regulated drug like Bravecto is a not a "consumer product" to which the MMWA could apply.  *See, e.g., Kanter v. Warner-Lambert Co*., 99 Cal. App. 4th 780, 798 (2002) (holding that drug regulated by FDCA is not "consumer product" under meaning of MMWA); *Kemp v. Pfizer, Inc*., 835 F. Supp. 1015, 1024 (E.D. Mich. 1993) (concluding that medical device is not "consumer product" under meaning of MMWA and explaining that "[g]oods that are not customarily available to the ordinary person are not consumer products"); *see also In re Minnesota Breast Implant Litigation*,

26

36 F. Supp. 2d 863 (D. Minn. 1998) (following *Kemp* and explaining that breast implants are not "consumer products" under meaning of MMWA because they are not readily accessible to all consumers); *Goldsmith v. Mentor Corp.*, 913 F. Supp. 56 (D.N.H. 1995) (following *Kemp* and explaining that testicular prosthesis is not "consumer product" under meaning of MMWA because it is not readily accessible to all consumers or normally used).

## 2. Federal Law Governs Intervet's Alleged Warranty.

Plaintiff also cannot sustain her MMWA claim because that statute is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." *See* 15 U.S.C. § 2311(d). Federal food and drug law plainly governs Intervet's marketing and sale of Bravecto. Plaintiff concedes as much: "In May 2014, the U.S. Food and Drug Administration ('FDA') approved the marketing and sale of Bravecto . . . ." Compl. ¶ 1; *see also* 21 U.S.C. 321(g)(1)(B)&(C); 21 U.S.C. § 360(b); 21 C.F.R. §514.80(b)(5)(ii); 21 C.F.R. §§ 201.105, 514.1–514.8. Therefore, Plaintiff's MMWA claim fails for this additional reason as well. *See, e.g., Kanter*, 99 Cal. App. 4th at 797 (rejecting MMWA claim because "the FDCA and its implementing regulations govern the labeling at issue here" for drug regulated by FDCA); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *14 (D.N.J. June 26, 2012); *Jasper v. MusclePharm Corp.,* 2015 WL 2375945, at *5–6 (D. Colo. April 9, 2015)(finding that because

27

dietary supplement product labels were governed by FDCA, MMWA did not apply), *recommendation adopted,* 2015 WL 2375945 (D. Colo. May 15, 2015).

### 3. Plaintiff Has Not Alleged That Intervet Provided A "Written Warranty" Within The Meaning Of The MMWA.

Finally, Plaintiff cannot maintain her MMWA claim based on an alleged representation that Bravecto is "safe and effective" because she does not- and cannot – allege facts plausibly demonstrating that any such statement constitutes a "written warranty" within the meaning of that statute. Compl. ¶ 114. A "written warranty" for purposes of the MMWA means, in relevant part, "any written affirmation of fact . . . which . . . affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time[.]" 15 U.S.C. § 2301(6)(A). Plaintiff does not allege that Intervet made any affirmation of fact that Bravecto was "defect free." To the contrary, as explained above in connection with Plaintiff's claim for breach of express warranty, Intervet's FDA-approved label disclosed any "contraindications, risk factors and potential side effects" for Bravecto and, therefore, Intervet did not make "unqualified guarantees of safety or effectiveness." *See* § IV(D), *supra*.

28

**H.** **THE COURT SHOULD DISMISS COUNT VI (CUTPA) FOR THREE ADDITIONAL REASONS.**

Plaintiff's CUTPA claim fails for three additional reasons: (1) it is time barred; (2) it is subsumed by the CPLA; and (3) CUTPA does not apply to Intervet's conduct that is the basis for Plaintiff's Complaint.

**1.** **Plaintiff's CUTPA Claim Is Time Barred.**

Plaintiff's CUTPA claim is subject to a three-year limitations period that is jurisdictional in nature and begins to run from "the occurrence of a [CUTPA] violation." *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."); *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212-213 (1988); *Avon Meadow Condo. Ass'n, Inc. v. Bank of Boston Connecticut*, 50 Conn. App. 688, 699-700 (1998)(explaining that CUTPA limitations period is jurisdictional).  As CUTPA's plain language indicates, it is the "occurrence of a [CUTPA] violation" that triggers the three-year limitations period – not the plaintiff's discovery of the defendant's alleged violation, the plaintiff's alleged injury or the accrual of the plaintiff's cause of action.  *See Fichera*, 207 Conn. at 216 ("Despite the existence in other states of statutes of limitation applicable to unfair trade practices establishing a limitation period for bringing an action that begins after discovery of the violation, our legislature has failed to create such an option for victims of

29

CUTPA violations in this state."); *see also id.* at 212 ("Unlike the statutes of limitation of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the deceptive practice for commencing suit . . . § 42-110g(f) provides only that an action must be brought within three years 'after the occurrence of a violation of this chapter.'"); *see also id.* at 212-13 (finding CUTPA limitations period analogous to others where "legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred").

Plaintiff alleges that Intervet violated CUTPA by failing to disclose to her certain alleged risks associated with Bravecto® before she purchased it for her dog. *See, e.g.,* Compl. ¶¶ 134, 136. Therefore, according to Plaintiff's allegations, any alleged CUTPA violation occurred no later than the date on which she purchased Bravecto – November 13, 2016. Compl. ¶ 41. Because Plaintiff did not file her Complaint until December 27, 2019, more than 3 years later, her CUTPA claim is time barred.[12] *See, e.g., Asatov v. D & L Auto Body & Towing, LLC*, 2019

---

[12] Dismissal on timeliness grounds at the Rule 12(b)(6) stage is appropriate where, like here, the untimely nature of the plaintiff's claim is apparent from the face of the complaint. *Bullock v. Borough of Roselle*, 2018 WL 4179481, at *6 (D.N.J. Aug. 31, 2018). Also, because CUTPA's limitations period is jurisdictional, to the extent necessary, this portion of Intervet's motion to dismiss is also brought

WL 1932575, at *3 (Conn. Super. Ct. Apr. 3, 2019) (dismissing CUTPA claim as time barred based on date of alleged CUTPA violation); *Kearney v. Thibault*, 2009 WL 2357999, at *2 (Conn. Super. Ct. June 16, 2009).

### 2.      **Plaintiff's CUTPA Claim Is Subsumed By The CPLA.**

Plaintiff's CUTPA claim also fails because it is subsumed by the CPLA. The CPLA is "the exclusive means by which a party may secure a remedy for an injury caused by a defective product." *See Town of Sprague v. Mapei Corp*., 2012 WL 1900120, at *2 (D. Conn. May 24, 2012) ("The legislature clearly intended to make our products liability act an exclusive remedy for claims falling within its scope."); *see also Gnazzo v. G.D. Searle & Co.,* 1990 WL 320243, at *2 (D. Conn. Nov. 29, 1990); *Provost-Daar v. Merz N. Am., Inc*., 2014 WL 1193481, at *3-4 (Conn. Super. Ct. Feb. 24, 2014); *Convention of Episcopal Diocese of Connecticut v. Minwax Co*., 1994 WL 149271, at *1 (Conn. Super. Ct. Apr. 4, 1994); *see also* Conn. Gen. Statutes § 52-572m(b) & n(a).  A claim falls within the exclusive scope of the CPLA where, *inter alia*, the plaintiff alleges property damage arising from a defective product, including without limitation alleged defects arising from inadequate warnings or instructions or "packaging, or labeling of any product." *See Mapei*, 2012 WL 1900120, at *2 (citing and quoting CPLA).

---

pursuant to Fed. R. Civ. P. 12(b)(1) as a facial jurisdictional attack on Plaintiff's CUTPA claim.  *See, e.g., In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

Here, Plaintiff alleges property damage in the form of, *inter alia*, injury to her dog that she claims resulted both from Intervet's inadequate warnings and because she claims Bravecto is unsafe and defective.  Compl. ¶¶ 130-31; 134; 136 (seeking payment of veterinary bills); 92 (alleging that "Bravecto was not reasonably fit, suitable or safe for its intended purpose because it contains toxic pesticide and failed to contain adequate warnings of the risk of neurological adverse reactions"); 93-94 (alleging that Bravecto had "dangerous defects").[13] Indeed, Plaintiff's CUTPA claim expressly incorporates the allegations from her other claims, including one asserted under the products liability act of another state (NJ).  Compl. ¶¶ 125; 90-97.  Therefore, Plaintiff's CUTPA claim is subsumed by the CPLA.  *See, e.g., Mapei Corp*.,  2012 WL 1900120, at *2-3 (dismissing CUTPA claim as subsumed by CPLA where plaintiff "seeks damages for injury to its property as a result of defendant's defective product"); *Provost-Daar v. Merz N. Am., Inc*., 2014 WL 1193481, at *3 (striking CUTPA claim alleging misrepresentations about product (injectable cosmetic gels) that harmed plaintiff as subsumed by CPLA ); *Dibello v. C.B. Fleet Holding Co*., 2007 WL 2756374, at *3 (Conn. Super. Ct. Aug. 31, 2007) (concluding that exclusivity provision of CPLA

---

[13] Plaintiff and Connecticut law consider dogs to be personal property.  *See* Compl. ¶ 96; Conn. General Statutes § 22-350; *see also Salko Farm & Stable, LLC v. Baus*,  2007 WL 1976241, at *4 (Conn. Super. Ct. May 24, 2007)(noting that animals are considered personal property under Connecticut law).

barred CUTPA claim where "plaintiff merely alleged that the defendants failed to warn the plaintiff of the potential harms from the proper use of the product and, as a result, the plaintiff was forced to pay a higher price for the product"); *Convention of Episcopal Diocese of Connecticut v. Minwax Co*., 1994 WL 149271, at *1 (striking CUTPA claim alleging misrepresentations about product as subsumed by CPLA and concluding that "the claim of misrepresentation is simply one facet of the overall allegation of product liability").

### 3.    CUTPA Does Not Apply To Intervet's Alleged Misconduct.

Plaintiff's claim also fails because CUTPA does not "apply to [ ] transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." *See* Conn. Gen. Stat. § 42-110(c) (a)(1).  "The CUTPA exemption does not require that the activity at issue be specifically directed or required but only [requires] that the actions be permitted and be subject to regulation by a regulatory board or officer."  *See Wheelabrator Envtl. Sys., Inc. v. Galante*, 2000 WL 863029, at *9-10 (D. Conn.  Mar. 31, 2000) (applying CUTPA exemption on motion to dismiss because relevant party entered into contract with government body authorized by statute to enter into such contracts and Connecticut Department of Environmental Protection "must review and approve such contracts").  As one Connecticut court explained:    "Section 42–110c (a) thus appears to be a

33

preemptive move by the Legislature to exempt from CUTPA all conduct that is subject to other comprehensive regulatory schemes." *See Blass v. Rite Aid of Connecticut, Inc*., 51 Conn. Supp. 622, 634, 16 A.3d 855, 863 (Conn. Super. Ct. 2009) (applying CUTPA exemption on motion to dismiss because defendant collected sales tax at issue for State of Connecticut under authority of state), *aff'd*, 127 Conn. App. 569, 16 A.3d 737 (2011).

The CUTPA exemption applies to Intervet's alleged conduct that is the basis for Plaintiff's Complaint.   Plaintiff alleges that the FDA has the authority to regulate, and does in fact regulate, Intervet's marketing and sale of Bravecto. Compl. ¶¶ 1, 27-28, 34-35.  Not only that, but Plaintiff alleges – correctly – that the FDA "approved the marketing and sale of Bravecto. . . ."  Compl. ¶ 1.  Plaintiff does not allege that Intervet's marketing of Bravecto deviated in any way from that which the FDA approved.   Therefore, even taking Plaintiff's allegations as true, Intervet's marketing and sale of Bravecto was "permitted under law as administered by any regulatory board or officer acting under statutory authority of . . . the United States." *See* Conn. Gen. Stat. § 42-110(c) (a)(1).

## I.   **ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF.**

The Court should dismiss Plaintiff's Complaint in its entirety for the reasons described above. Alternatively, if any portion of Plaintiff's Complaint survives, the Court should dismiss her request for injunctive relief for lack of standing.

### 1.   **Plaintiff Does Not Face A Risk Of Future Injury.**

To have standing to seek injunctive relief, a plaintiff must "establish that she is likely to suffer future injury from the defendant's conduct." *In re: Johnson & Johnson Talcum Powder Prods. Marketing, Sales Practices and Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018)(citation and internal quotation omitted). Plaintiff cannot satisfy this requirement because she alleges that she believes Bravecto is dangerous and she believes it has risks of seizures and, therefore, she cannot be injured in the future by any failure to disclose the alleged risks she outlines in her Complaint; it is not likely that Plaintiff is going to purchase Bravecto for a dog and allegedly suffer future injury. *Id.* (affirming dismissal of complaint and explaining that "[b]ecause [the plaintiff] makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude that she is not likely to suffer future economic injury").

**2.** **Plaintiff's Request For Injunctive Relief Is Moot.**

Plaintiff's request for injunctive relief in the form of an updated Bravecto disclosure is also moot.  According to Plaintiff, Intervet now discloses in its FDA-approved label "the risk of neurologic adverse reactions from Bravecto, including tremors, ataxia, and seizures" – precisely the disclosure she claims Intervet should be required to make.  Compl. ¶ 34.  Accordingly, because Intervet already makes the disclosure Plaintiff seeks, her request for injunctive relief is moot.  *Cf., e.g., Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 660 (Ct. App. 1993)(finding that plaintiff's request for injunctive relief was moot because of, *inter alia*, FDA-approved label changes).

36

## V. **CONCLUSION**

Intervet respectfully requests that the Court dismiss Plaintiff's Complaint.

      **McCARTER & ENGLISH, LLP**

      By: */s/ Natalie H. Watson*
        Natalie H. Watson
      Natalie H. Watson, Esq.
      Theresa A. Dill, Esq.
      Four Gateway Center
      100 Mulberry Street
      Newark, New Jersey 07102
      nwatson@mccarter.com
      tdill@mccarter.com

      Kristofor T. Henning, Esq.
      1600 Market Street, Suite 3900
      Philadelphia, PA 19103
      khenning@mccarter.com

      Michael P. Kelly, Esq.
      (*pro hac vice* application forthcoming)
      Renaissance Centre
      405 N. King St., 8th Floor
      Wilmington, DE 19801
      mkelly@mccarter.com

      **HUGHES HUBBARD & REED LLP**
      Charles W. Cohen, Esq.
      James C. Fitzpatrick, Esq.
      (*pro hac vice* application forthcoming)
      One Battery Park Plaza
      New York, NY 10004
      charles.cohen@hugheshubbard.com
      james.fitzpatrick@hugheshubbard.com

Dated:  February 28, 2020    *Attorneys for Defendant*