**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALERIE PALMIERI, *et al.*, | Civil Action No. 19-cv-22024 |
| *Plaintiffs*, | |
| v. | **OPINION** |
| INTERVET INC. d/b/a/ MERCK ANIMAL HEALTH, | |
| *Defendant*, | |

**John Michael Vazquez, U.S.D.J.**

This putative class action arises out of Plaintiffs' purchase and use of Defendant's flea and tick medicine for their pets. This matter comes before the Court by way Defendant's motion to dismiss Plaintiffs' First Amended Complaint, D.E. 31 ("FAC"). The Court reviewed the parties' submissions[1] in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is granted in part and denied in part.

Defendant's brief contains approximately thirty-nine substantive pages. About thirty-one pages contain argument (including thirty-two separate point headings, some of which that are nearly as long as the related substantive argument), consisting of approximately twenty-seven different bases as to why the FAC should be dismissed in whole or in part, why certain Plaintiffs' claims fail, why the Court should dismiss any demand for injunctive relief, and why a class action is impossible to maintain. The Court does it best to address these staccato bursts of advocacy. At the same time, as to the counts that rely on New Jersey law, Defendant "does not concede that

---

[1] Defendants' motion to dismiss, D.E. 33 ("Br."); Plaintiff's opposition, D.E. 34 ("Opp."); and, Defendants' reply in further support of their motion to dismiss, D.E. 35 ("Reply").

New Jersey law governs any of Plaintiffs' claims and reserves the right to demonstrate otherwise in the future, if necessary." Br. at 8 n. 3. Notably, Defendant does not indicate what law should apply. Defendant nevertheless continues that it "has demonstrated . . . why Plaintiffs' claim fail even under the law they have chosen." *Id.* This is an odd statement because if Defendant's motion to dismiss is based on the wrong law, then it seems that the appropriate remedy would be to the deny the motion without further consideration. However, the Court has decided not to pursue that course and instead addresses the merits of the motion.

## I. BACKGROUND

Defendant Intervet d/b/a Merck Animal Health ("Intervet") is a company headquartered in New Jersey that "manufactures, distributes, markets, and sells Bravecto to consumers and veterinarians across the United States." FAC ¶ 22. Bravecto is the trade name for the drug fluralaner, which includes a pesticide called isoxazoline. *Id.* ¶ 1. In May 2014, the United States Food and Drug Administration ("FDA") "approved the marketing and sale of Bravecto tablets for dogs and Bravecto topical solutions for cats and dogs . . . for the treatment and prevention of flea and tick infestations." *Id.* ¶ 1. Isoxazoline poisons insects through their nervous systems causing uncontrolled neural activity and death. *Id.* ¶ 54. However, due to the very nature of Bravecto, it also presents a risk of neurological toxicity in animals that ingest it, *id.* ¶ 4, which presents the central issue in this case. Named Plaintiffs, all dog-owners, claim that Defendant stated that Bravecto was safe when it was not. And Plaintiffs' primary claim is that they would not have bought Bravecto, or would have paid less for it, had they known of the neurological risks.

Bravecto comes in two forms: an ingestible, chewable tablet for dogs as well as a topical solution for dogs and cats. *Id.* ¶ 54. Intervet markets Bravecto as "more potent" than other flea and tick preventatives – consumers are instructed to give one tablet or apply the topical solution once every twelve weeks compared to the common monthly use for other products. *Id.* ¶ 53.

Plaintiffs assert that they were "injured at the point of sale[.]" *Id.* ¶ 11. Plaintiffs continue that Defendant markets Bravecto directly to consumers, *id.* ¶¶ 3, 49, but also note that the product can only be obtained through a veterinarian's prescription, *id.* ¶ 2.

Plaintiffs purchased Bravecto for their dogs: Plaintiff Palmieri purchased Bravecto to treat her dog Jake on or around November 13, 2016, *id*. ¶ 17; Plaintiff Gordon purchased Bravecto for her dog Charlie in May and September 2015, *id*. ¶ 18; Plaintiff Moraski purchased the Bravecto product to treat her dog Summer in or around August 2015, *id*. ¶ 19; Plaintiff Reeves purchased Bravecto for her dog Remi in "March, June, and September of 2018," *id*. ¶ 20; and Plaintiff Tucker purchased Bravecto to treat her dogs Gizmo and Duchess in November of 2016, *id*. ¶ 21.[2]

As noted, Plaintiffs generally allege that Bravecto presents a risk of neurological toxicity in the animals that ingest it and that Intervet "failed to adequately disclose this risk to consumers." *Id*. ¶ 4. Plaintiffs assert this neurological toxicity causes "adverse reactions, including but not limited to, death seizures, shaking/tremors/ataxia, neurological/cognitive issues, muscular/balance issues and vomiting/loss of appetite." *Id*. ¶ 23. Plaintiffs' pets experienced the symptoms described above. *Id*. ¶ 24.

Plaintiffs claim that Intervet knew of these risks when it first launched Bravecto in 2014. *See, e.g.*, ¶ 25. Plaintiffs continue that Intervet knew or was on notice of the dangers of Bravecto because (1) the functionality of Bravecto – the fact it is "ingested or applied to animals and absorbed into their blood stream" – leads to a known risk; and because of (2) numerous consumer complaints detailing adverse reaction to Bravecto. *Id*. Plaintiff first points to a 2018 report concerning isoxazoline class medications from a parasitology expert which detailed, in relevant

---

[2] Plaintiffs include color photographs of their dogs in the FAC. FAC at 6-10. The Court takes judicial notice that all are very cute. However, such cuteness plays no part in the Court's decision.

part, that "[isoxazoline class medications] can still cause toxicity in mammals, depending on the animal's physiological state, health, and history." *Id*. ¶ 28 (alteration in original). Plaintiffs next assert that Intervet's own study "determined that Bravecto has the ability to cross an animal's cell membranes to bind to them, which is what prevents from being eliminated from their body except over a longer period of time." *Id*. ¶ 29. Plaintiffs indicate that before the FDA approved Bravecto, "safety studies and clinical trials indicated that isoxazoline drugs could cause neurologic adverse reactions in animals." *Id*. ¶ 31.

Plaintiffs also claim that consumers reported 32,000 adverse events associated with isoxazoline to the FDA between January 2013 and September 2017. *Id*. ¶ 33. Of those, 17,000 related to Bravecto "with reports of 2.5% deaths, 2.8% seizures, 3.6% shaking/tremors/ataxia, 1.6% neurological/cognitive and 4.2% muscular/balance issues." *Id*. Similarly, according to Plaintiffs, the European Medicines Agency ("EMA") received over 7,000 reports of adverse events relating to isoxazoline, with "4,351 of these reported adverse events related to Bravecto with 23.56% deaths, 18.73% seizures, 6.23% ataxia or tremors, 7.54% loss of motor function, limb stiffness, inability to walk, 1.56% loss of coordination/balance." *Id*. ¶ 34.

Plaintiffs add that in September 2015, an individual wrote a syndicated newspaper column detailing his experience with administering Bravecto, which led to his pet's death. *Id*. ¶ 36. The individual then started a Facebook group concerning the adverse effects of Bravecto which now has 48,000 members. *Id*. Plaintiffs say that Intervet knew of the column because the company responded publicly to the column in March 2016 "downplaying the seriousness of the reports." *Id*. ¶ 37. Two Plaintiffs claim that Intervet similarly dismissed their concerns when they attempted to report adverse effects of Bravecto directly to Intervet. *Id*. ¶ 38. Plaintiffs add that, as early as

February 2016, other companies using isoxazoline-based products disclosed risks of neurological adverse reactions as a warning to consumers on their websites and with their products. *Id*. ¶ 39.

Despite Intervet's knowledge of Bravecto's risks, Plaintiffs indicate that the company failed to adequately disclose them to consumers and instead marketed (and continues to market) Bravecto as safe. *See id.* ¶ 42. Plaintiffs continue that Intervet claims Bravecto is "FDA approved and proven safe for both dogs and cats for 12 weeks." *Id*. ¶ 50. Plaintiffs also point to the FAQ page on Intervet's website which says, in relevant part, "BRAVECTO has a wide margin of safety in dogs who weigh at least 4.4 lb. and cats who weigh at least 2.6 lb. It is also approved for puppies and kittens aged 6 months or older. BRAVECTO Chew is approved for use in breeding, pregnant, and lactating dogs." *Id*. ¶ 51 (capitalization in original).

Plaintiffs assert that "[a]t no time during the time period relevant to this action did Defendant's Bravecto packaging provide an adequate warning of possible adverse neurological reactions." *Id*. ¶ 55. Plaintiffs incorporate into their FAC a picture of the label on the Bravecto packing purchased by a Plaintiff. *Id*. However, much of the label is covered by what appears to be a sticker from a veterinary clinic. *Id*. Plaintiff also incorporates the "insert" of Bravecto packaging. *Id*. ¶ 56. Part of the insert titled "Adverse Reactions" indicates that in a "well-controlled U.S. field study . . . there were no serious adverse reactions." *Id*. The insert lists the most common adverse reactions: vomiting, decreased appetite, diarrhea, lethargy, polydipsia, flatulence. *Id*. However, the insert states that in a "reproductive safety study," "there were no clinically-relevant, treatment related effects" but did disclose that "[o]ne adult treated dog suffered a seizure during the course of the study." *Id*. Plaintiffs allege that they "saw the Bravecto product and its packing and materials prior to use," *id*. ¶ 57, and accordingly had "no notice of" the potential adverse ricks they claim Bravecto causes. *Id*.

Plaintiffs allege that on September 20, 2018, the FDA issued a press release "warning pet owners and veterinarians of the potential risk of neurological adverse events associated with isoxazoline medication to treat fleas and ticks, including Bravecto." *Id*. ¶ 61. According to Plaintiffs, the "FDA requested that manufacturers change their labels to disclose these risks, so that veterinarians and pet owners could make an informed decision as to whether they want to use these treatments on their pets." *Id*. The FDA's Press Release stated that "data received by the agency as part of its routine post-marketing activities indicates that some animals receiving Bravecto (fluralaner tablets for dogs, Bravecto (fluralaner) topical solution for cats and dogs) . . . have experienced adverse events such as muscle tremors, ataxia, and seizures." *Id*. In addition, the FDA indicated that it was "working with manufacturers of isoxazoline products to include new label information to highlight neurologic events because these events were seen consistently across the isoxazoline class or products." *Id*. Plaintiffs continue that Intervet began to disclose the neurological risks associated with Bravecto only after the FDA's Press Release and that Intervet still "downplays and minimizes these risks as being uncommon and most prevalent in animals with a history of seizures, even though seizures have occurred in animals without any such history, like Plaintiffs' dogs." *Id*. ¶ 63. Plaintiffs "believe" that Intervet's current adverse effects disclosures are inadequate and additional disclosures are necessary to inform consumers about the risks Bravecto poses to pets; Plaintiffs do not indicate what the additional disclosures should consist of. *Id*. ¶ 66.

Plaintiffs claim that they made purchasing decisions they otherwise would not have made because of Intervet's alleged late disclosure of the adverse neurologic effects of Bravecto. *See id*. at 43-46. Specifically, Plaintiffs assert that had they been aware of Bravecto's risks, they either "would not have purchased Bravecto, or would not have paid the price that they paid for it." *Id*. ¶

45. Plaintiffs state that they did not "receive the benefit of their bargain" and that, instead, "they purchased products that [were] of a less standard, grade, and quality than represented, with undisclosed heal and safety risks." *Id*. ¶ 46. Plaintiffs also seek consequential damages "in the form of veterinarian treatment" of their pets who were harmed by Bravecto. *Id.* ¶ 12.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on December 27, 2019. D.E. 1. On February 28, 2020, Intervet moved to dismiss the Complaint. D.E. 19. On July 7, 2020, Plaintiffs filed their FAC. D.E. 31. Plaintiffs bring the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1367. Plaintiffs seeks to certify a nationwide class comprised of "[a]ll purchasers or users of Bravecto products in the in the United States or its territories between May 1, 2014, and the present." FAC ¶ 84. Plaintiffs also seeks to certify state (Connecticut, Illinois, Texas, and New York) subclasses consisting of "[a]ll purchasers or users of Bravecto products in that particular state between May 1, 2014 and the present." *Id.* at ¶ 85.

The FAC lists the following Counts: (1) breach of express warranty by Plaintiffs Palmieri, Gordon, Reeves, and Tucker on behalf of a nationwide class (Count One); (2) breach of implied warranty by Plaintiffs Palmieri, Gordon, Reeves, and Tucker on behalf of a nationwide class (Count Two); (3) products liability by all Plaintiffs on behalf of a nationwide class (Count Three); (4) Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110g, *et seq.* ("CUTPA"), by Plaintiffs Palmieri and Moraski on behalf of a Connecticut subclass (Count Four); (5) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), by Plaintiff Gordon on behalf of an Illinois subclass (Count Five); (6) Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1, *et seq.* ("IUDTPA"), by Plaintiff Gordon on behalf of an Illinois subclass (Count Six); (7) New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq.*

("NYGBL"), by Plaintiff Tucker on behalf of a New York subclass; (8) Texas Trade Deceptive Practices–Consumer Protection Act, Texas Bus. & Com. Code §§ 17.41, *et seq.* ("DTPA"), by Plaintiff Reeves on behalf of a Texas subclass (Count Eight); (9) strict liability by all Plaintiffs on behalf of a nationwide class (Count Nine); and (10) unjust enrichment by all Plaintiffs on behalf of a nationwide class (Count Ten).

The present motion followed.

## III.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If,

after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

For allegations sounding in fraud, Fed. R. Civ. P 9(b) imposes a heightened pleading standard. Specifically, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must plead fraud with sufficient particularity such that he puts the defendant on notice of the "precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## IV.    ANALYSIS

Defendant moves to dismiss the FAC generally and makes arguments specific to Plaintiffs' individual claims. The Court addresses each argument in turn below.

### A.  Motion to Dismiss the FAC

Defendant moves to dismiss the entire FAC because "Plaintiffs admit that the Bravecto label disclosed that in one study 'one adult treated dog suffered a seizure during the course of the study[.]" Br. at 8. Defendant also points out that the Bravecto label pictured in the FAC states that "in another study, one dog was observed to be 'dull' and 'inappetant.'" *Id*. The Court denies Defendant's motion on this ground because Defendants do not cite any law for the proposition that

such disclosures are sufficient nor do they discuss which claims or specific elements of such claims this argument applies to. To the extent Intervet makes this argument as to Plaintiffs' specific claims, the Court will consider the argument in the appropriate context. Defendants cite to *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 44 (2011) for the proposition that the existence of adverse event reports standing alone does not indicate whether a drug is causing the adverse events. Br. at 9. But in this case, Plaintiffs do not rely solely on the adverse event reports.

Defendant also asserts that the FAC should be dismissed because no Plaintiff alleges that "she actually saw, read or was exposed to any materials from Intervet containing any . . . misrepresentations/omissions before her Bravecto purchases, let alone identify the specific content of any such alleged misrepresentation/omission." Br. at 10. Defendant reasons that because "Plaintiffs were not exposed to Intervet's alleged misrepresentations/omissions until *after* their purchases (the point of their alleged injury), then those alleged misrepresentations/omissions logically could not have caused their alleged injury and the entire AC fails." Br. at 11 (emphasis in original (citing *Averey v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 198-200 (2005)). As above, Defendant fails to analyze the implications of these arguments in the context of Plaintiffs' specific claims. Defendant does not provide any analysis indicating the claim for which it seeks dismissal, the required elements for such claim, or the specific element that it believes is not adequately pled. In addition, Defendant cites to *Averey*, a decision from the Supreme Court of Illinois, but it is unclear to the Court what bearing this case should have on Plaintiffs claims that are not based in Illinois law, and Defendant does not provide an explanation. Even as to the Illinois claims, Defendant provides no analysis. As above, Defendants fail to specify how this argument applies to Plaintiffs' specific claims. To the extent Intervet makes this argument as to Plaintiffs' specific claims, the Court will consider this argument as to those claims.

### B. Motion to Dismiss Counts Two, Three, Nine, and Ten as Subsumed under New Jersey's Products Liability Act

Defendant argues that because Plaintiffs allege property damage in the form of injury to their dogs, their claims for breach of implied warranty (Count Two), products liability[3] (Count Three), strict liability (Count Nine), and unjust enrichment (Count Ten) are subsumed under New Jersey's Products Liability Act ("NJPLA"). Br. at 12-13. Plaintiffs counter that they are asserting representation-based claims and that the NJPLA does not subsume such claims. Opp. at 10-11.

The NJPLA provides that

> [a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose[.]

N.J. Stat. Ann. § 2A:58C-2. The NJPLA defines "product liability action" as "any claim or action brought by a claimant for harm caused by a product, *irrespective of the theory underlying the claim*, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3) (emphasis added). The statute defines "harm" as

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or *other loss deriving from* any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J. Stat. Ann. § 2A:58C-1(b)(2) (emphasis added).

The NJPLA also provides as follows:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: [(1)] deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or [(2)] failed

---

[3] The Court interprets Defendant's argument to mean a common law claim for products liability.

> to contain adequate warnings or instructions, or [(3)] was designed
> in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.

"When read in light of these definitions, it becomes clear that [the NJPLA] effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991); *see also In re Lead Paint Litig.*, 191 N.J. 405, 436-37 (2007) ("The language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products."). "The NJPLA generally subsumes common law product liability claims." *Id.* Thus, "the [NJ]PLA is the exclusive remedy for harms caused by a product." *DeBenedetto v. Denny's, Inc.*, 421 N.J. Super. 312, 319 (Law. Div. 2010), *aff'd*, No. 09-4135, 2011 WL 67258 (App. Div. Jan. 11, 2011); *see also Sinclair v. Merck & Co.*, 195 N.J. 51, 66 (2008) ("[T]he [NJ]PLA is paramount when the underlying claim is one for harm caused by a product.").

Plaintiffs' common law products liability claim seeks to recover for "injury and death to [their] animals, constituting property damage to Plaintiffs" allegedly caused by Bravecto. FAC ¶ 132. Plaintiffs' common law strict liability claim seeks damages for the following: Bravecto "severely injured—and in some instances killed—their pets." *Id.* ¶ 205; *see also id.* ¶ 211. These claims seek to recover for "physical damage to property" caused by the product Defendant manufactured and are therefore subsumed under the NJPLA. *See* N.J. Stat. Ann. § 2A:58C-1(b)(2). Counts Three and Nine are dismissed without prejudice as subsumed under the NJPLA.

The next issue is whether Plaintiffs' claims for breach of an implied warranty and unjust enrichment are likewise subsumed. In support, Defendant cites to *Sinclair v. Merck & Co.*, 948 A.2d 587, 588 (N.J. 2008). That case, however, did not involve claims for breach of implied

warranty or unjust enrichment. Nor did the decision in *Greisberg v. Bos. Sci. Corp.*, No. CV 19-12646, 2020 WL 278648, at *1 (D.N.J. Jan. 17, 2020). Nevertheless, in *Schraeder v. Demilec (USA) LLC*, No. CIV. 12-6074 FSH, 2013 WL 3654093, at *4 (D.N.J. July 12, 2013), the court dismissed a claim for unjust enrichment after concluding the claim was "nothing more than conclusory legal language used to dress up a claim that, in reality, sounds in product liability." *Id.* The *Schraeder* court reasoned that although the plaintiff alleged the defendant's product was promoted as "green" and "non-toxic," the essence of plaintiffs' real claim was that the defendant "failed to warn of the potential health issues that could occur if their product was not mixed correctly, which resulted in harm from the product." *Id*. The court therefore found that the plaintiffs' unjust enrichment claim was subsumed by the NJPLA.

Plaintiff cites to *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418 (D.N.J. 2016), *as amended* (May 31, 2016) for the proposition that representation-based claims are not subsumed. As relevant here, the plaintiff in *Volin* brought implied warranty, consumer fraud act, and unjust enrichment claims based on alleged defects in a gas stove the defendant sold. *Id*. at 415-16. The defendant moved to dismiss those claims as subsumed under the NJPLA. *Id*. The court explained that although a "quasi-products liability claim -- one that a defective product caused personal injury to the plaintiff, or even consequential damage to the plaintiffs home" would fall under the NJPLA, "when the 'essential nature' of the claim is not a [NJ]PLA claim," it may exist distinct from an NJPLA claim. *Id*. at 418. The *Volin* court reasoned that the plaintiffs' theories of harm did not fall under the NJPLA, explaining that "[t]he common theme of those other counts is not that the product caused harm to plaintiff or her property" but that plaintiff "did not get what she paid for." *Id*. The court denied the motion to dismiss. *Id*.

As to Plaintiffs' unjust enrichment claim, the Court finds that it is not representation based and therefore falls within the reasoning of *Schraeder*. Plaintiffs' critical allegation is that Defendant "sold a product that was unsafe" and that Plaintiffs cannot "use the product without fearing they will seriously endanger their pets." *Id*. ¶¶ 217-18; *see also id*. ¶ 219 ("Defendant also benefited by selling Bravecto products that were *unsafe*." (emphasis added)). This claim appears to be premised solely on the effects of a defective product, Bravecto, and is really "nothing more than conclusory legal language used to dress up a claim that . . . sounds in product liability." *Schraeder*, 2013 WL 3654093, at *4. Accordingly, Plaintiffs Counts Three (products liability), Nine (strict liability), and Ten (unjust enrichment) are dismissed without prejudice as subsumed under the NJPLA.

Plaintiffs' implied warranty claim is not as clear. On the one hand, Plaintiffs' implied warranty claim does not appear to be a traditional products liability claim; rather, Plaintiffs allege that when Bravecto was sold it "was not in merchantable condition and not fit for the ordinary purpose for which it was intended[.]" FAC ¶ 119. And Plaintiffs' claim that they paid a price for Bravecto that they otherwise would not have had Intervet not represented Bravecto as generally safe without serious side effects. FAC ¶¶ 5, 45. Accordingly, it could be argued that the common theme of Plaintiffs' claim for implied warranty is that they "did not get what [they] paid for," *i.e.*, a safe pet medication. *Volin*, 189 F. Supp. 3d at 418. On the other hand, as discussed, there are other allegations in the FAC that Defendant "failed to warn of the potential health issues that" Bravecto could cause which ultimately caused harm to Plaintiffs' property – their pets. *Schraeder*, No. CIV. 12-6074 FSH, 2013 WL 3654093, at *4.

In *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 156 (N.J. 2020), the New Jersey Supreme Court evaluated whether a claim under the New Jersey Consumer Fraud Act ("CFA") can "be

based, in part or exclusively, on a claim that also might be actionable under the Products Liability Act." *Id*. at 148. The *Fike* court held that "irrespective of the nature of damages, a CFA claim alleging express misrepresentations – deceptive, fraudulent, misleading, and other unconscionable commercial practices – may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects." *Id*. The *Fike* court explained that that although it had in the past evaluated NJPLA subsumption questions through reference to "the essential nature of the claim," the phrase should not be "regarded as the interpretative guide to the PLA." *Id*. at 156. The court reasoned that although a CFA claim "premised upon a product's manufacturing, warning, or design defect" would be subsumed, "nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product." *Id*. at 155. The court in *Fike* continued that "[n]either the Federal Rules of Civil Procedure nor the New Jersey Court Rules preclude separate claims premised upon separate theories of liability from being advanced in the same pleading and sought at the same trail." *Id*. The New Jersey Supreme concluded that a "CFA claim alleging express or affirmative misrepresentations -- deceptive, fraudulent, misleading, and other unconscionable commercial practices -- may proceed in separate counts of the same pleading as a PLA claim alleging product design, manufacturing, or warning defects." *Id*. at 156.

There are few cases interpreting the *Fike* decision. However, a recent case in this district found that an implied warranty claim was not subsumed under the NJPLA in light of *Fike*. *Copeland v. Poliquin Performance Center 2, LLC, et al.*, No. 319CV20278BRMZNQ, 2021 WL 1207728, at *4 (D.N.J. Mar. 30, 2021). In *Copeland*, the plaintiff, a professional football player, sued the manufacturer of the supplement "Yang R-ALA" and the team that encouraged him to use the supplement. *Id*. at *1. The plaintiff claimed that he relied on the label of the supplement,

which represented that the drug did not contain "Ostarine," a substance banned by the National Football League ("NFL"). *Id*. However, the supplement did contain Ostarine, the plaintiff tested positive for the drug, and the NFL then suspended the plaintiff. *Id*. at *2. The plaintiff alleged financial and reputational harm based on the suspension. *Id*. The *Copeland* court had previously dismissed several of the plaintiff's claims – including an implied warranty claim – as subsumed under the NJPLA. *Id*. Plaintiff moved for reconsideration based on *Fike*. *Id*. at *3. On reconsideration, the court in *Copeland* held that the plaintiff's factual allegations "present no direct and unavoidable conflict that would preclude Plaintiff from pursuing both CFA and PLA-based claims." *Id*. at *4. The court focused on the plaintiff's allegation that he relied "on the label of the Yang R-ALA bottle and website description that Yang R-ALA did not contain Ostarine[.]" *Id*. The court concluded that the plaintiff was alleging "express or affirmative misrepresentations" and therefore vacated its previous order "as to the dismissal with prejudice of Count Four, to the extent it asserted a claim for beach of implied warranty." *Id*. at *5.

Plaintiffs' implied warranty claim here is similar to the one alleged in *Copeland*. As discussed, Plaintiffs' implied warranty claims appear to be based on Defendant's allegedly false representations that Bravecto was safe. *See e.g.,* FAC ¶ 120. In light of *Fike*, the Court denies Defendant's motion to dismiss Plaintiffs' implied warranty claim.

### C. Motion to Dismiss Count One

Defendant next argues that its alleged representation that Bravecto was safe cannot support a claim for breach of express warranty under New Jersey law. Br. at 15 (citing *In re Avandia Mktg. Sales Practice & Prods. Liab. Litig.*, 588 Fed. App'x. 171 (3d Cir. 2014)). Plaintiffs counter that Intervet's representations are actionable because the FAC alleges that "Defendant's disclaimers of risk factors were incomplete and misleading." Opp. at 12-13, n. 7.

In New Jersey, a plaintiff must allege the following to state a claim for breach of express warranty[4]: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J. Stat. Ann. § 12A:2-313); *see also Topoleski v. Veshi*, No. 16-1820, 2019 WL 149721, at *6 (N.J. Super. Ct. App. Div. Jan. 8, 2019). As to the "basis of the bargain" element, a plaintiff must allege that she "read, heard, saw or knew of the advertisement containing the [express warranty]" when choosing to use the product. *Metcalfe v. Biomet, Inc.*, No. 18- 456, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019) (citing *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992)).

Intervet appears to attack the first element of Plaintiffs' express warranty claim, arguing that it disclosed any "contradictions, risk factors and potential side effects" for Bravecto in its approved label. Br. at 15. In support, Intervet cites to *In re Avandia Mktg. Sales Practices & Prod. Liab. Litig.*, 588 F. App'x 171, 173 (3d Cir. 2014). There, the Third Circuit affirmed the dismissal of the breach of express warranty claim, which was based on the defendant's alleged representation that its drug "Avandia" was safe and effective. *See id.* at 179. Based on the defendant's disclosure that Avandia "is contradicted for patients with New York Heart Association Class III or IV heart failure, [and] may increase the risk of cardiac failure or other cardiac effects," the *Avandia* court reasoned that the defendant had not made an unqualified statement that Avandia was safe and effective. *Id.* at 177. The Circuit further rejected the argument that defendant

---

[4] A claim for breach of an express warranty is not subsumed by the NJPLA. N.J. Stat. Ann. § 2A:58C-1(b)(3).

breached the express warranty "because the company failed to disclose or understated known cardiac risks that rendered Avandia potentially dangerous to consumers." *Id*. at 178. The court in *Avandia* reasoned that the plaintiff was attempting to recast his express warranty claim as a failure to warn and that "[f]ailure to warn and express warranty are different causes of action." *Id*.

*Avandia* is distinguishable. In that case, the defendant provided significant and specific warnings, listing specific categories of individuals who should not take its medication. The warnings here do not contain any comparable level of specificity. Bravecto's packaging indicated that there "are no known contradictions for the use of the product," and that, in a "well-controlled study" there "were non-serious adverse reactions." *See* FAC ¶ 56. Plaintiffs also rely on the indication that "in a margin of safety study, there were not clinically-relevant, treatment related effects" and that the common adverse reactions to Bravecto were "vomiting, decreased appetite, diarrhea, lethargy, polydipsia, and flatulence." *Id*. Although the packaging did indicate that "Bravecto has not been shown to be effective for 12-weeks duration in puppies less than 6 months of age" and that Bravecto is not effective against a specific kind of tick, these statements are not at issue. Intervet's representations indicate that Bravecto is generally safe, save for a few "non-serious" side effects. *See* FAC ¶ 56. Defendants' motion to dismiss based on its alleged disclosure of the "contradictions, risk factors and potential side effects," of Bravecto, Br. at 15, is denied.

### D. Motion to Dismiss Based on Failure to Provide Pre-Litigation Notice

Defendant next argues that Plaintiffs' breach of express and implied warranty claims (Counts One and Two) should be dismissed for failure to provide pre-litigation notice, as required under N.J. Stat. Ann. 12A:2-607(3)(a). Br. at 17-18 (citing *Hammer v. Vital Pharms., Inc.*, No. CIV.A. 11-4124 2012 WL 1018842, at *11 (D.N.J. Mar. 26, 2012)). Plaintiff counters that pre-litigation notice is not required in a case against a remote manufacturer who was not the immediate

seller of the product, that the adequacy of notice is a jury issue, and that "[a]t least one Plaintiff provided notice on behalf of herself and the Nationwide Class prior to filing this action." Opp. at 16 (citing FAC ¶¶ 38, 108). Neither party cites to New Jersey authority on this issue.

N.J. Stat. Ann. § 12A:2-607(3)(a) provides the following notice requirement for a breach of express warranty claim: "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J. Stat. Ann. § 12A:2-607(3)(a); *see also Hammer v. Vital Pharms., Inc.*, No. CIV.A. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) ("Based upon the language, this statutory notice is a condition precedent to filing any suit for breach of warranty." (internal quotation marks and citation omitted)).

Both parties rely on District of New Jersey decisions in support of their arguments. In *Strzakowlski v. Gen. Motors Corp.*, No. CIV. A. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005), cited by Plaintiffs, Judge Rodriquez stated that he had "previously predicted that the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a remote manufacturer who was not the immediate seller of a defective product." *Id*. Judge Rodriguez continued that even if notice were required that "New Jersey would require a buyer to give notice only to his immediate seller." *Id*. *Strzakowlski* cited to a previous decision, *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487, 1498 (D.N.J. 1988), which in turn relied on a New Jersey Supreme Court decision, *Santor v. A & M Karagheusian, Inc.*, 207 A.2d 305, 313 (N.J. 1965), that Judge Rodriquez described as overruled on other grounds. *Strzakowlski*, No. CIV.A. 04-4740, 2005 WL 2001912 at 3, n.6. In *Santor*, the New Jersey Supreme Court held that the notification provision of the previously applicable "Uniform Sale of Goods Law" had "no application in actions such as this one against the manufacturer." *Santor*, 207 A.2d at 313. More recently, a

court in this district reached the same conclusion as *Strzakowlski*. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *13 (D.N.J. May 8, 2017). The *Volkswagen* court reasoned that Section 2-607(3)(a) only required the plaintiffs to provide notice to "the *seller* of a product." *Id.* (emphasis in original (citation omitted)). The court determined that pre-suit notice was not required where the defendant was not the direct seller but was instead "the remote manufacturer and/or seller." *Id.*

Defendants rely on *Hammer v. Vital Pharms., Inc.*, No. CIV.A. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012), in which the court found that the "[p]laintiff offer[ed] no excuse or explanation for his failure to" provide pre-suit notice. *Id.* at *11. Importantly, the plaintiff in *Hammer* bought the alleged defective product directly from the manufacturer. *See id.* at *1; *see also id.* at *11 ("At no time has any court in this district or in the state of New Jersey found that a buyer is not required to provide a *direct* seller with pre-suit notice in an action for express breach of warranty." (emphasis added (internal quotation marks and citation omitted))).

Here, Plaintiffs do not allege they bought Bravecto directly from Intervet. And the Court finds the reasoning from *Strzakowlski* and *Volkswagen* to be persuasive. Defendant's motion to dismiss Plaintiff's warranty-based claims for failure to provide pre-suit notice is denied.

### E.  Motion to Dismiss Plaintiff Moraski's Claims

Intervet seeks dismissal of Plaintiff Moraski's claims because the FAC alleges that she continued using Bravecto even after the FDA's 2018 press release. Br. at 18. Plaintiffs reply that there is no basis to infer that Moraski saw the FDA's press release before her dog suffered seizures in 2019. Opp. at 18. Defendants again provide no legal authority in support of this argument and do not engage in any legal analysis as to the specific elements of Plaintiff Moraski's claims.

Intervet's motion to dismiss Plaintiff Moraski's claims are denied (unless the claims are otherwise dismissed in this Opinion).

### F. Motion to Dismiss Plaintiff Gordon's Claims Based on the Statute of Limitations

Intervet moves to dismiss Plaintiff Gordon's claims under the statute of limitations. Br. at 18-19. Defendant argues that the statute begins running "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Br. at 19 (quoting N.J. Stat. Ann. 12A:2-725(1) – (2)).[5] Defendant contends the statute has run as to Plaintiffs' breach of warranty claims since her last alleged Bravecto purchase occurred in September 2015. *Id*.

The statute of limitations is an affirmative defense which is not normally decided on a motion to dismiss. *See Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id*. Here, the applicable statute of limitations for Plaintiffs' warranty claims is four years. N.J. Stat. Ann. § 12A:2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." N.J. Stat. Ann. § 12A:2-725(2). On the face of the FAC, Plaintiff Gordon alleges that her last purchase of Bravecto was September 2015. FAC ¶ 18. Absent an exception, Plaintiff Gordon's warranty claims appear to be time barred. Plaintiffs contend that Defendant's express

---

[5] Defendant argues for dismissal under New Jersey's statute of limitations. *See* Br. at 18-19. Plaintiff Gordon similarly relies on New Jersey law. *See* Opp. at 18 ("Plaintiff Gordon's claims are timely. *Under New Jersey law* . . . ." (emphasis added)). Because the parties agree that New Jersey law governs as to these claims, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

warranties as to Bravecto were extended to future performance and therefore the cause of action accrued "when the breach is or should have been discovered." N.J. Stat. Ann. § 12A:2-725(2).

The "key requirement in finding a warranty of future performance is that it makes specific reference to a future time." *Docteroff v. Barra Corp. of Am.*, 659 A.2d 948, 954 (N.J. Super App. Div. 1995) (quoting *Commissioners of Fire Dist. No. 9, Iselin, Woodbridge, N.J. v. Am. La France*, 424 A.2d 441, 444 (N.J. Super App. Div. 1980)). Such a warranty

> cannot be characterized as a mere representation of the product's condition at the time of delivery rather than its performance at a future time. Additionally, unlike a warranty to repair or replace, such warranty does not assume that the product will not perform and will need repair or replacement.

*Id*. In *Docteroff*, the court found that a warranty which promised that a "roof will be 'watertight' and will be returned to that condition were it to leak" referred to a condition in the future. *Id*. Here, Plaintiffs provide no analysis explaining how Intervet's warranties promised future performance. And the exception for future performance is not otherwise obvious to the Court. Plaintiffs also appear to attempt to invoke the doctrines of fraudulent concealment and estoppel but again to provide relevant authority or analysis. *See* Opp. 19-20.[6]

Based on the express allegations in the FAC, FAC ¶ 18, Gordon's claims accrued in September 2015 when she purchased the product. As a result, the statute of limitations ran in September 2019.[7] Plaintiff Gordon's express and implied warranty claims are dismissed without prejudice.

---

[6] Plaintiff Gordon appears to invoke the doctrines of fraudulent concealment and estoppel, but fails to cite to any legal authority. *See* Opp. 19-20. As a result, the Court cannot properly evaluate Plaintiff's arguments as to either fraudulent concealment or estoppel.

[7] The initial Complaint in this matter was filed on December 27, 2019, that is three months after the statute of limitations ran, so it does not appear that the relation-back doctrine provides Gordon relief.

### G. Motion to Dismiss Plaintiffs' Statutory Claims

Defendant argues that Plaintiffs' "statutory claims" – Counts Four through Eight – should be dismissed for failure to allege an injury caused by Intervet. Br. at 19. Defendant claims that "no Plaintiff alleges that she actually incurred any [] veterinarian costs." Br. at 20. Defendant adds that Plaintiffs have failed to adequately allege each of them "would not have bought Bravecto for her dog or [] would have bought Bravecto, but only at a lower price." *Id*. Plaintiffs respond that each Plaintiff alleges they paid a premium for Bravecto and were injured at the point of sale because "had they known the actual risks of Bravecto, they either would not have purchased the product or would not have paid the full retail price. Opp. at 20 (citing FAC ¶¶ 9, 11, 17-21).

Defendant relies on *Lewis v. Casey*, 518 U.S. 343 (1996), but does little to explain the relevance of that decision. *See* Br. at 19-20. In *Lewis*, the Supreme Court evaluated an injunction issued to remedy constitutional violations by officials of the Arizona Department of Correction ("ADOC"). *Id*. at 346. The *Lewis* Court affirmed that an inmate alleging a violation of his or her constitutional right of access to the courts "must show actual injury." *Id*. at 349. As for class actions, the Supreme Court ruled that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and purport to represent." *Id*. (internal quotation and citation omitted). At the same time, the *Lewis* Court distinguished the pleading stage from the post-trial stage. The Court observed that "[t]he general allegations of the complaint in the present case *may well have sufficed* to claim injury by named plaintiffs, and hence standing to demand remediation" but "that point is irrelevant now, however, for we are beyond the pleading stage." *Id*. (emphasis added).

As best the Court can discern, it appears that Defendants are arguing that the named Plaintiffs must allege that they personally have suffered injury and that they may not rely on injuries to other, unnamed class members. Plaintiffs appear to agree and point to the following injuries alleged in the Complaint as to the named Plaintiffs: "Ms. Palmieri would not have given the Bravecto product to her pet, or would have paid significantly less for it, if Defendant had disclosed" all the risks associated with the product to her, FAC ¶ 17; *id.* ¶ 18 (same allegation as to Plaintiff Gordon); *id.* ¶ 19 (same allegation as to Plaintiff Moraski); *id.* ¶ 20 (same allegation as Plaintiff Reeves); and *id.* ¶ 21 (same allegation as to Plaintiff Tucker). These allegations sufficiently allege an injury to the named Plaintiffs. In response, Defendants, without citation to any authority, claim that "Plaintiffs who allege two mutually exclusive theories of injury without alleging which one applies to each of them have alleged no actionable injury at all." Br. at 9. The Court disagrees. Fed. R. Civ. P. 8 explicitly provides that the demand for relief sought in a pleading "may include relief in the alternative or different types of relief." *See* Fed. R. Civ. P. 8(a)(3).

### H. Motion to Dismiss Count Four (CUTPA)

Separately, Defendant claims that Count Four, a claim under CUTPA brought by Plaintiffs Palmieri and Moraski, should be dismissed for additional reasons. Br. at 20-25. Defendant first argues CUTPA's three-year statute of limitations bars the claim. Br. at 21. Plaintiff counters that, under Connecticut law, the statute of limitations is tolled where products provide insufficient warnings. Opp. at 22-23.

An action for damages under CUTPA "may not be brought more than three years after the occurrence of a violation of [CUTPA]."[8] *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *3 (D. Conn. Nov. 24, 2015) (quoting Conn. Gen. Stat. § 42-110g(f)). In *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 475 (Conn. 1988), the Connecticut Supreme Court rejected a lower court's application of the discovery rule to the statute of limitations to a CUTPA claim. The *Fichera* court observed that "unlike the statutes of limitations of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the deceptive practice for commencing suit . . . § 42-110g(f) provides only that an action must be brought within three years 'after the occurrence of a violation of this chapter.'" *Id*. at 475-76. The *Fichera* court reasoned that the legislature's use of "occurrence of a violation" precluded a construction "delaying the start of the limitation period until the cause of action [] accrued or the injury [] occurred." *Id*. at 476. Here, Plaintiff Palmieri alleged that she last purchased Bravecto on November 13, 2016. FAC ¶ 17. Thus, absent an exception, the statute of limitations ran on Palmieri's CUTPA claim on November 13, 2019, approximately a month before the initial Complaint was filed. *See* D.E. 1. Similarly, Plaintiff Moraski claimed that she last purchased Bravecto on or around August 2015, meaning that the statute of limitations ran in August 2018.

Plaintiffs do not invoke the discovery rule; instead, they rely on the continuing course of conduct doctrine. "The Connecticut Supreme Court 'has recognized that under certain circumstances, the limitations period may be tolled under the continuing course of conduct

---

[8] As discussed above, the statute of limitations is an affirmative defense which is not normally decided on a motion to dismiss. *See Crump*, 147 F. Supp. 3d at 259. However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id*.

doctrine." *Bartold*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *4 (quoting *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000)).  Specifically, the Connecticut Supreme Court has recognized the following:

> [T]wo general categories in which the continuing course of conduct doctrine has tolled, or theoretically could toll, the statute of limitations. One category may be satisfied when an initial act or omission occurs, and a special relationship creates an ongoing duty to correct or otherwise ameliorate the wrong. A second general category addresses situations in which, because of a continuous course of contacts or dealings, it cannot be said with precision when a specific act or omission occurred in the course of the relationship. In this situation, the statute may be tolled until the time of the last act within the course of the relationship. There may, of course, be scenarios which analytically fit both categories.

*Id.* (quoting *Partitions, Inc. v. Blumberg Assocs., Inc.*, No. CV980576664S, 2001 WL 1332174, *3 (Conn. Super. Ct. Oct. 9, 2001)).  There are no allegations in the FAC that give rise to a plausible inference that Plaintiffs were in a special relationship with Intervet, so the first category does not apply.  In addition, Plaintiffs have not alleged "a continuous course of contacts or dealings" with Intervet such that "it cannot be said with precision when a specific act or omission occurred." *Id.* To the contrary, Plaintiffs identify the last dates on which they purchased Bravecto and allege no further contacts with Intervet.  Although Moraski claims she continued to administer Bravecto to her dog until September 2019, FAC ¶ 19, the interaction with Defendant – her purchase of Bravecto – occurred in 2015.  Plaintiffs cannot avail themselves of the continuing course of conduct doctrine.

Plaintiffs next contend that Connecticut's doctrine of fraudulent concealment tolled the statute of limitations.  Opp. at 24.  Connecticut law provides as follows:

> If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable

> therefor at the time when the person entitled to sue thereon first discovers its existence.

Conn. Gen. Stat. Ann. § 52-595. "To establish fraudulent concealment, the plaintiff must prove that the defendants were aware of the facts necessary to establish the cause of action and intentionally concealed them from her for the purpose of obtaining delay in filing a complaint on the cause of action." *Izzarelli*, 117 F. Supp. 2d at 177 (citing *Bound Brook Assocs. v. City of Norwalk*, 504 A.2d 1047, 1051 (Conn. 1986)). "Under Connecticut law, the concealment must have taken place within three years of the filing of the action." *Id*. (citing *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 101 (Conn. 1998)). Plaintiffs must "allege with particularity the circumstances surrounding the alleged fraudulent concealment." *Hodges v. Glenholme Sch.*, No. 3:15-CV-1161 (SRU), 2016 WL 4792184, *4 (D. Conn. Sept. 13, 2016), *aff'd*, 713 F. App'x 49 (2d Cir. 2017)).

Plaintiffs point to *Izzarelli*, where the court found that the allegations that the defendant tobacco company "concealed its illegal youth marketing practices and made false denials that were designed to conceal the truth" sufficiently pled fraudulent concealment. *Izzarelli,* 117 F. Supp. 2d at 177. There, the plaintiff alleged that the defendant participated in a vast conspiracy – forming trade associations and other advocacy groups in partnership with other tobacco companies – to conceal the harmful effects of its tobacco products. *Id*. at 171-72. Here, Plaintiffs adequately allege that – based on its own studies, studies of competitors, as well as consumer complaints, and adverse events reports, *see* FAC ¶¶ 29-46, Intervet was aware Bravecto had the potential to cause seizures at least as early as 2016. Plaintiffs add that Intervet engaged in such acts as denying the harmful effects of Bravecto in March 2016. *Id*. ¶ 36-37. Plaintiffs continue that after EMA concluded in July 2017 that Intervet had to update its package to include convulsions as a new side effect, Intervet "continued to conceal these adverse effects as a warning from consumers in the

United States." *Id*. ¶ 35.   These allegations sufficiently plead fraudulent concealment under Connecticut law such that the Court cannot resolve the statute of limitations issue as a matter of law at this stage.   Defendant's motion to dismiss Plaintiffs' CUTPA claims based on the statute of limitations is denied.

Defendant next claims that Plaintiffs' CUTPA claim is subsumed by Connecticut's Products Liability Act.  Br. at 23.  Plaintiffs counter that CUTPA and products liability claims may be maintained simultaneously where the CUTPA claim seeks to redress a financial injury that is not a traditional tort remedy for harm caused by a defective product.  Opp. at 26-27.  In *Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 771 (Conn. 2003), the Connecticut Supreme Court addressed the following question: "whether the exclusivity provision of the product liability act . . . serves to prevent the plaintiff from also asserting a particular claim under CUTPA."  The *Gerrity* court held that Connecticut's products liability act did not prevent the plaintiff from asserting a CUTPA claim under the circumstances.  *Id*.   The court reasoned as follows:

> In part, at least, the plaintiff's CUTPA claim does not seek a remedy for personal injury, death or property damage.  The plaintiff seeks, rather, to use CUTPA so as to redress merely a *financial injury* suffered by the decedent, of a kind that has never been regarded as part of the traditional tort remedy for harm caused by a defective product. The plaintiff alleged that the decedent was forced to pay a higher price for the defendants' cigarettes than she would have had to pay in the absence of the wrongful course of conduct allegedly engaged in by the defendants. The financial injury allegedly suffered by the decedent and for which the plaintiff seeks to use CUTPA to provide a remedy, cannot reasonably be construed to be a claim for personal injury, death or property damage.

*Id*. at 775-76 (emphasis in original (internal quotations and citations omitted)).   Here, Plaintiffs allege the same injury as in *Gerrity* – that absent Defendant's misrepresentations concerning Bravecto, they "would have paid significantly less for [Bravecto]." *Id*. ¶¶ 17, 19.  Plaintiffs' claims

are therefore not subsumed under Connecticut's products liability act, and Defendant's motion to dismiss on that basis is denied.

Defendant argues that CUTPA does not apply to Intervet's conduct based on a statutory exemption. Br. at 24. Defendant claims that CUTPA does not "apply to transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." *Id.* Plaintiff counters that the mere use of a label pursuant to a regulatory scheme is insufficient to invoke the protection under the CUTPA safe harbor. Opp. at 28 (citing *Patane v. Nestlé Waters N. Am., Inc.*, No. 3:17-CV-01381 (JAM), 2020 WL 4677636, at *4 (D. Conn. Aug. 12, 2020)).

Conn. Gen. Stat. Ann. § 42-110c(a)(1) provides in part that CUTPA shall not apply to "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States[.]" Conn. Gen. Stat. Ann. § 42-110c(a)(1). In assessing whether this exemption applies, a court must first identify the transaction or action at issue by determining the broader pattern of activity by the defendant, not the specific allegations of misconduct. *Connelly v. Hous. Auth. of City of New Haven*, 567 A.2d 1212, 1216 (Conn. 1990); *see also Patane*, 478 F. Supp. 3d at 329. Here, the broader pattern of activity alleged is Intervet's sale of Bravecto with an accompanying label and documentation representing that Bravecto is safe and would only cause non-serious side-effects. FAC ¶ 140; *see e.g., Patane*, 478 F. Supp. 3d at 329 ("Here, Nestlé's broader pattern of activity is its sale of bottled water as 'spring water' in Connecticut."). The court must next determine whether the conduct at issue is "expressly authorized and pervasively regulated." *Patane*, 478 F. Supp. 3d at 329 (quoting *Normand Josef Enterprises, Inc. v. Connecticut Nat. Bank*, 646 A.2d 1289, 1304 (Conn. 1994)). Here, although Defendant claims that "it is undisputed that the FDA approved the label for

Bravecto," it fails to cite relevant evidence in support. The FAC does allege that the FDA specifically approved the language of which Plaintiffs now complain. The FAC does contain general allegations as to the FDA's approval of Bravecto as well as its issuance of the 2018 press release, but Defendants do not submit authority demonstrating that the language of Intervet's labels is "pervasively regulated." Defendant's motion to dismiss based on Conn. Gen. Stat. Ann. § 42-110c(a)(1) is denied.

Defendant next argues that Plaintiffs Palmieri and Moraski have not adequately alleged causation because Bravecto is only available through a licensed veterinarian and they "have not alleged any facts about their interactions with any veterinarian." Br. at 22. Plaintiffs counter that the existence of an intermediary cannot break the chain of causation, Opp. at 26 (citing *See In re Avandia*, 804 F.3d at 644), and also argue that the FAC adequately pleads causation, *id*. at 25 (citing FAC ¶147; *id*. ¶¶ 17-19). Defendants do not cite legal authority in support of their argument. Instead, Defendants cite to *Abrahams v. Young & Rubicam, Inc.*, 692 A.2d 709, 713 (Conn. 1997), apparently for the general causation standard under CUTPA. That case, however, did not involve a prescription drug, much less an argument that a veterinarian breaks the chain of causation. Defendants have not sustained their burden on this argument.

Defendants also claim that the Plaintiffs have not alleged that "their injury was caused by any alleged misrepresentations/omissions about Bravecto." Br. at 22. As to this argument, the Court agrees. To state a CUTPA claim, Plaintiffs must allege a prohibited act that "was the proximate cause of a harm to the plaintiff." *Abrahams*, 692 A.2d at 713. "[P]roximate cause is '[a]n actual cause that is a substantial factor in the resulting harm." *Id*. Palmieri and Moraski have not sufficiently alleged that Defendants' alleged impropriety was "a substantial factor" in bringing about their purchases of Bravecto. Palmieri and Moraski complain of misrepresentations and

omissions concerning the safety of Bravecto in its labeling and insert. These allegations fall short of plausibly pleading the "substantial factor" requirement. Plaintiffs CUTPA claim is dismissed without prejudice.

## I.  Motion to Dismiss Counts Five and Six (ICFA & IUDTPA)

Defendant argues that Counts Five and Six are time-barred under the Illinois' statute of limitations. *Id.* at 28. Plaintiff Gordon does not appear to respond to this argument.[9] *See* Opp. at 32-33; *see also* Reply at 13. A three-year statute of limitations applies to Plaintiffs IUDTPA claim. *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *2 (N.D. Ill. Sept. 22, 2014) ("[A] three-year limitations period applies to [the claimant's] . . . IDUTPA claims." (citing 815 Ill. Comp. Stat. 505/10a(e)); *see also Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, No. 02 C 5096, 2003 WL 21982141, at *13 (N.D. Ill. Aug. 20, 2003) ("The three-year statute of limitations under the Illinois Consumer Fraud and Deceptive Busines Practices Act . . . has been applied to the Illinois Uniform Trade Practices Act.")). Similarly, the statute of limitations under the ICFA is three years and begins to run when the cause of action accrues. *Gredell v. Wyeth Lab'ys, Inc.*, 803 N.E.2d 541, 546 (Ill. App. 2004). "A cause of action generally accrues when the plaintiff suffers injury." *Id.* "A cause of action not filed within the statute of limitations is time barred." *Id.* Plaintiff Gordon alleges her last purchase of Bravecto was in September 2015. FAC ¶ 18. Based on the FAC's allegations, the limitations period for Ms. Gordon's claims ran in September 2018, more than a year before the filing of the initial Complaint. D.E. 1. Absent the application of an exception, Gordon's claims are time-barred. Here, Plaintiffs have failed to

---

[9] As discussed above, the statute of limitations is an affirmative defense which is not normally decided on a motion to dismiss. *See Crump*, 147 F. Supp. 3d at 259. However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id*.

provide any argument or analysis as to the application of a pertinent exception. Accordingly, Gordon's ICFA and IUDTPA claims, Counts Five and Six, are dismissed without prejudice.

### J. Motion to Dismiss Count Seven (NYGBL § 349)

Intervet first argues that Plaintiff Tucker's claim is time barred under New York's three-year statute of limitations. Br. at 26. Plaintiff responds that claims under NYGBL § 349 are equitably tolled "until such time as a plaintiff 'either acquires actual knowledge . . . or should have acquired such knowledge' of her claim." Opp. at 30-31, n. 15 (quoting *Ponzio v. Mercedes-Benz U.S.A., LLC*, 2020 WL 1183733, at *40 (D.N.J. Mar. 11, 2020)).

The statute of limitations applicable to claims under NYGBL § 349 is three years. *Ponzio*, 2020 WL 1183733, at *40 (citing *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007)). The limitations period accrues upon injury, which occurs "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Id.* (citing *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011)). Tuckers date of injury, the date of her purchase of Bravecto, occurred in November 2016. Accordingly, the statute of limitations ran on Tucker's claim in November 2019, one month before the filing of the initial Complaint in this matter. Absent an exception, Tucker's claim is time barred.

Under New York law, "the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 790 (S.D.N.Y. 2017) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks omitted)). "Due diligence on the part of the plaintiff in bringing an action . . . is an essential element of equitable relief" and the plaintiff "bears the burden of showing that the action was

brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." *Id*. (quoting *Abbas*, 480 F.3d at 642). Moreover, a "plaintiff must show that the defendant wrongfully concealed its actions, such that plaintiff was unable, despite due diligence, to discover facts that would allow him to bring his claim in a timely manner, or that defendant's actions induced plaintiff to refrain from commencing a timely action." (quoting *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 467 (S.D.N.Y. 2015)).

Here, Plaintiffs adequately allege that based on its own studies, studies of competitors, as well as consumer complaints, and adverse events reports, *see* FAC ¶¶ 29-46, Intervet was aware that Bravecto had the potential to cause seizures at least as early as 2016. Plaintiffs further claim that Intervet engaged in such deceptive acts as denying the harmful effects of Bravecto in March 2016. *Id*. ¶ 36-37. Plaintiffs add that after EMA concluded in July 2017 that Intervet had to update its package to include convulsions as a new side effect, Intervet "continued to conceal these adverse effects as a warning from consumers in the United States." *Id*. ¶ 35. Plaintiffs also note that after they obtained the information necessary to form the basis of their claim through the 2018 FDA press release, they filed their claim within the three-year limitations period. *See* D.E. 1. At this stage, the Court cannot conclude as a matter of law that Tucker's claim is barred by the statute of limitations, Defendant's motion in that regard is denied.

Defendant next moves to dismiss Count Seven for failure to adequately plead an act directed at consumers. NYGBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. To state a claim under GBL § 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are

misleading in a material way, and (3) the plaintiff has been injured as a result." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Intervet argues that Tucker cannot demonstrate that Intervet engaged in an act "directed at consumers" because Bravecto is only available through a prescription. Br. at 26-27 (citing *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 173 (W.D.N.Y. 2014)). Plaintiff disagrees because "Intervet markets Bravecto directly to consumers and the product insert was intended to be read by consumers before giving Bravecto to their pets." Opp. at 30. Plaintiffs contend that New York law "has never equated" veterinarians with prescribing physicians. Opp. at 31. Plaintiffs continue that, even if veterinarians do constitute learned intermediaries under New York law, a "physician can only be considered a learned intermediary if the warnings from the drug manufacturer adequate." *Id.*

The parties cite conflicting federal cases on this issue. Defendants cite to *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 174 (W.D.N.Y. 2014). There, the court held that the alleged failure of the defendants, manufacturers of the prescription drug Tysabri, to provide adequate warnings as to the side effects of Tysabri did not constitute "a practice directed at consumers" because "the duty to warn of a drug's side effects and risks runs to the doctor prescribing the drug, and not the patient taking the drug." *Id.* at 173-174 (citing *Lindsay v. Ortho Pharm. Corp.*, 367 F.2d 87, 91 (2d Cir. 1980)). The court in *Scism v. Ethicon, Inc.*, No. 1:19-CV-1543, 2020 WL 1245349, (N.D.N.Y. Mar. 16, 2020) relied on *Amos* in holding that the plaintiff, purchaser of the defendant Johnson & Johnson's prescription device Gynemesh, was "not a consumer in the sense that New York contemplates" and that the plaintiff "failed to plead any consumer-oriented conduct." *Id.* at *8 ("Courts in this Circuit interpreting New York law have held that a medical warning is 'not an

act directed at consumers,' but is instead directed at the prescribing physician." (citing *Amos*, 28 F. Supp. 3d at 173-74)).

Plaintiffs point to *Williamson v. Stryker Corp.*, No. 12 CIV. 7083 CM, 2013 WL 3833081, *2 (S.D.N.Y. July 23, 2013). In that case, the plaintiff sued the defendant under NYGBL § 349 as to a surgically implanted device that the defendant had manufactured. The *Williamson* court found that the defendant's marketing of the device did constitute consumer-oriented behavior. *Id*. at *14. The court explained that "[t]he standard for establishing consumer-oriented conduct is very liberal, and where a defendant deals with a plaintiff in the same way as it would deal with any other customer, such conduct is considered 'consumer oriented.'" *Id*. (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)). The court in *Williamson* reasoned that the defendants' conduct was consumer oriented because the defendants dealt with the plaintiff "in the same way they would deal with any other customer who has questions, concerns, or complaints about their products." *Id*. Similarly, the court *Mahoney v. Endo Health Sols., Inc.*, No. 15CV9841 (DLC), 2016 WL 3951185, at *1 (S.D.N.Y. July 20, 2016), found that the plaintiff adequately pled a claim under NYGBL § 349 arising from labels on a prescription drug for children. *Id*. at *9. The *Mahoney* court rejected the defendants' argument that "the statements at issue were directed to doctors or pharmacists, not patients, and therefore the statements were not meant to mislead consumers." *Id*. The court determined that the "defendants' reading of the phrase 'consumer-oriented' under New York law [was] unduly narrow." *Id*. at *9.[10]

---

[10] Defendant responds that *Mahoney* and *Williamson* did not address the argument Defendant raises. The Court disagrees. *Mahoney* addressed the same argument.

The parties do cite to divergent legal authority. In concluding that labels and marketing materials for prescription drugs were not consumer oriented, the *Amos* court relied on New York's informed intermediary doctrine. *Amos*, 28 F. Supp. 3d at 173 (citing *Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87, 93 (2d Cir. 1980)). That doctrine provides as follows:

> Except where FDA regulations otherwise provide, the manufacturer's duty is to warn the doctor, not the patient. The doctor acts as an "informed intermediary" between the manufacturer and the patient, evaluating the patient's needs, assessing the risks and benefits of available drugs, prescribing one, and supervising its use.

*Lindsay*, 637 F.2d at 91. The *Amos* court reasoned that because the duty to warn in prescription drug cases extends only to prescribing doctors and not patients, labels and marketing materials for prescription drugs are not consumer oriented as a matter of law. *Amos*, 28 F. Supp. 3d at 173. However, based on *Lindsay*, the doctrine appears to have been applied originally to failure to warn cases, and *Lindsay* only addressed the doctrine in the context of a failure to warn claim. Besides *Amos* and *Scism* – which solely relied on *Amos* – Defendant has not cited any other authority stating that the informed intermediary doctrine applies to NYGBL § 349. And *Mahoney* expressly rejected the application of the informed intermediary doctrine to the plaintiffs Section 349 claim, reasoning that the doctrine was limited "to failure to warn claims." *Mahoney*, 2016 WL 3951185, at *9.

Based on the apparent disagreement among federal courts in New York, the original application of the implied intermediary doctrine, and Defendant's failure to provide New York state court decisions consistent with *Amos* and *Scism*, the Court does not conclude at this stage that the statements in question were not consumer oriented as a matter of law. Here, Plaintiffs' adequately allege that Intervet communicated with them "in the same way they would deal with any other customer who has questions, concerns, or complaints about their products." *Williamson*,

No. 12 CIV. 7083 CM, 2013 WL 3833081, at *2; *see e.g.*, FAC 38.  Intervet's motion to dismiss

on this theory is denied.

Intervet finally argues that Tucker has not satisfied the causation element of her NYGBL

claim because Bravecto is only available through a licensed veterinarian and Tucker has not

alleged any facts about her interaction with any veterinarian.  Br. at 27.  Save *Amos*, Defendant

fails to provide any authority in support.  Defendant's motion to dismiss for lack of causation is

denied.

### K.  Motion to Dismiss Count Eight (DTPA)

Defendant argues that Plaintiff Reeves has failed to adequately plead detrimental reliance

in her DTPA Count because she has not "identified the content of any alleged

misrepresentation/omission from Intervet that she saw/heard before her Bravecto purchases."  *Id*.

at 30.  Reeves responds that her allegations concerning her reliance on Bravecto's packaging are

sufficient.  Opp. at 34.

The relevant Texas statute provides as follows:

> (a) A consumer may maintain an action where any of the following
> constitute a producing cause of economic damages or damages for
> mental anguish:
>> (1) the use or employment by any person of a false, misleading,
>> or deceptive act or practice that is:
>>> (A) specifically enumerated in a subdivision of Subsection
>>> (b) of Section 17.46 of this subchapter; and
>>> (B) relied on by a consumer to the consumer's detriment;
>> (2) breach of an express or implied warranty;
>> (3) any unconscionable action or course of action by any person;
>> or
>> (4) the use or employment by any person of an act or practice in
>> violation of Chapter 541, Insurance Code.

Tex. Bus. & Com. Code § 17.50.  To state a valid claim under the DTPA, Reeves must show (1)

that she is a consumer, (2) that the defendant engaged in false, misleading, or deceptive acts, and

(3) that those acts were a producing cause of her damages.  *Tsao v. Ferring Pharms., Inc.*, No. 4:16-CV-01724, 2017 WL 746451, at *8 (S.D. Tex. Jan. 4, 2017), *report and recommendation adopted*, No. 4:16-CV-1724, 2017 WL 749009 (S.D. Tex. Feb. 24, 2017).

Reeves has failed to adequately plead reliance as to her claim under Section 17.50(a)(1) because she was required to plead that she "relied on" Intervet's alleged "false, misleading, or deceptive act or practice" to her "detriment."  Tex. Bus. & Com. Code § 17.50(a)(1); *see also Tsao*, No. 4:16-CV-01724, 2017 WL 746451, at *9 ("Before any misrepresentations can be said to be actionable, it must have induced the purchase.  The fact that a false representation may have been made, does not necessarily create liability, if it is learned after the fact." (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)).    Plaintiffs merely allege Reeves "saw the Bravecto product and its packing and materials prior to use" and that "Defendant's packaging and materials did not disclose any risk of neurological adverse reactions upon the use of Bravecto." FAC ¶¶ 20, 56.  Reeves does not allege that she relied on Intervet's alleged misrepresentations in deciding whether to purchase Bravecto at the price she paid.  *See id*. ¶ 20 (alleging Reeves "would have paid significantly less for [Bravecto] if Defendant disclosed such risks.").  Reeves' DTPA claim under Section 17.50(a)(1) is dismissed without prejudice.

Plaintiffs argue that they have also asserted a claim under Section 17.50(a)(3) for an "unconscionable action or course of action" by Intervet.  Opp. at 35.  Plaintiffs further argue that "[r]eliance is not a statutory element of this claim."  *Id*.  An unconscionable act or course of action is "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  *Marek v. Lehrer*, No. 03-17-00509-CV, 2018 WL 6217566, at *9 (Tex. App. Nov. 29, 2018).  Plaintiffs are correct that "unlike the 'deceptive' prong of the DTPA, the statute does not require 'reliance' to support a

finding of unconscionability," but they ignore that "the unconscionable action [still] must be the producing cause of the damages." *Id*. (citing Tex. Bus. & Com. Code § 17.50(a)). To meet this "producing cause" standard, Plaintiffs must allege that "the act was a substantial factor in bringing about the injury, without which the injury would not have occurred." *Id*.

Reeves has not sufficiently alleged that Defendants unconscionable act or course of action "was a substantial factor" in bringing about her purchase of Bravecto.[11] Reeves has failed to allege an unconscionable act besides the alleged misrepresentations and omissions concerning the safety of Bravecto in its labeling and insert. Again, Reeves merely alleges that she "saw the Bravecto product and its packing and materials *prior to use*" and that "Defendant's packaging and materials did not disclose any risk of neurological adverse reactions *upon the use* of Bravecto." FAC ¶¶ 20, 57 (emphases added). These allegations fall short of sufficiently alleging the "substantial factor" requirement. Plaintiff Reeves' claim under Section 17.50(a)(3) is dismissed without prejudice.

### L. Motion to Dismiss Claim for Injunctive Relief

Intervet also moves to dismiss Plaintiffs' claims for injunctive relief for lack of standing. Br. at 32-34. Defendant argues that Plaintiffs have not pleaded they are likely to suffer future harm because Plaintiffs admit that Intervet now discloses the risks of Bravecto that Plaintiffs complained of. *Id*. at 33.

"To have standing to seek injunctive relief, [a claimant] must establish that she is likely to suffer future injury' from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) (internal quotation marks removed (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)). "In the

---

[11] Although it is unclear, to the extent Plaintiffs argues that Reeves was also injured by paying veterinarian expenses, Opp. at 34-35, the Court finds that Reeves has not adequately pled such an injury.

class action context, that requirement must be satisfied by at least one named plaintiff." *McNair*, 672 F.3d at 223. "The threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects." *Id*. (internal citations and quotation marks omitted).

Here no named Plaintiff alleges that they have continued to purchase Bravecto. *See* FAC ¶¶ 17-21; *see also McNair*, 672 F.3d at 224 (finding the plaintiffs lacked standing to pursue injunctive relief because, in part, plaintiffs admitted that "they, unlike the class members they seek to represent, are not Synapse customers and are thus not currently subject to Synapse's allegedly deceptive techniques."). The FAC also contains detailed allegations of Intervet's current disclosures as to Bravecto. FAC ¶ 63 (describing the warnings as to "tremors, ataxia, and seizures" on Bravecto's label); *id*. ¶ 64 (describing warnings on Intervet's website); *id*. ¶ 65 (describing warnings on television commercials and YouTube); *see also Johnson & Johnson*, 903 F.3d at 292 ("Because [plaintiff] makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude she is not likely to suffer future economic injury."). Plaintiffs lone allegation of future harm is that they "are informed and believe that additional disclosures are necessary to inform consumers about the risks Bravecto pose[s] to pets." *Id*. ¶ 65. This conclusory allegation as to Plaintiffs' vague beliefs is not entitled to the presumption of truth. Plaintiffs have failed to adequately plead facts to plausibly suggest they are likely to suffer future injury.[12] Accordingly, Plaintiffs' claim for injunctive relief is dismissed without prejudice.

---

[12] In passing, Plaintiffs say they "could seek other, important relief by way of a recall." *Id*. at 38. But as to injunctive relief, the FAC seeks to enjoin "Defendant from continuing the unlawful

### M. Motion to Strike Plaintiffs' Class Allegations

Intervet alternatively requests that if the Court does not dismiss the FAC in its entirety, that the Court strike "Plaintiffs' class allegations and permit their claims to proceed, if at all, only on an individual basis." Br. at 34. Defendant argues that the class allegations should be stricken because medical causation will be a "highly individualized" inquiry and therefore cannot satisfy Fed. R. Civ. P. 23.

Although Defendants do point to one case in this district where a court struck an obviously insufficient class, *Martinez v. Equifax Inc.*, No. CV 15-2100 (SRC), 2016 WL 226639, at *4 (D.N.J. Jan. 19, 2016), the general view in this district is that it is "premature" to "strike class allegations" at the "pleading stage." *Chernus v. Logitech, Inc.*, No. CV 17-673(FLW), 2018 WL 1981481, at *8 (D.N.J. Apr. 27, 2018) (quoting *Bang v. BMW of N. Am., LLC*, No. CV 15-6945, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016) ("Dismissal of class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule, and is almost uniformly disfavored.")); *see also McGuire v. BMW of N. Am., LLC*, No. CIV.A. 13-7356 JLL, 2014 WL 2566132, at *4 (D.N.J. June 6, 2014) ("[T]he Court concludes that the arguments raised by Defendant in support of its request to strike or dismiss Plaintiff's class action allegations are premature given the early stage of this litigation.")). Defendant does not attempt to address or distinguish these cases, *see* Reply at 2, and Defendant also fails to argue that Plaintiffs' class allegations "have *no possible relation* to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues," *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2009) (emphasis added), as required under Fed. R. Civ. P. 12(f). *See also McGuire*,

---

practices as set forth herein and ordering Defendant to engage in a corrective advertising campaign." FAC at 56, ¶ (e).

No. CIV.A. 13-7356 JLL, 2014 WL 2566132, at *4.  Finally, Plaintiffs' claims are only being dismissed without prejudice, and they will be given an opportunity to amend.

Defendant's motion to strike Plaintiffs' class allegations is denied without prejudice.

**V.     CONCLUSION**

 For the reasons stated above, Defendant's motion is granted in part and denied in part.  An appropriate Order accompanies this Opinion.

Dated: May 28, 2021

John Michael Vazquez, U.S.D.J.