# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VALERIE PALMIERI, DIANE GORDON, TERI IPPOLITO, GAYLE MORASKI, HOLLY REEVES, and AMY TUCKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTERVET INC. d/b/a MERCK ANIMAL HEALTH, a subsidiary of MERCK & CO., INC.,<br><br>Defendant. | **Civil Action No. 19-22024 (JXN) (AME)**<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant Intervet, Inc. *d/b/a* Merck Animal Health's ("Defendant's") motion to dismiss and strike class allegations in Plaintiffs Valerie Palmieri ("Palmieri"), Diane Gordon ("Gordon"), Teri Ippolito ("Ippolito"), Gayle Moraski ("Moraski"), Holly Reeves ("Reeves"), and Amy Tucker's ("Tucker") (collectively, the "Plaintiffs'")[1] third amended class action complaint ("TAC") (ECF No. 136) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 151). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332(d) and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(c). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART**.

---

[1] Plaintiff Patti Mastric voluntarily dismissed her claims, accordingly she does not appear in the TAC. (ECF No. 97).

## I.    **BACKGROUND AND PROCEDURAL HISTORY**[2]

Plaintiffs reside in Connecticut, Florida, Illinois, New York, and Texas, and purchased "Bravecto" in 2015 to 2018. (SAC ¶¶ 19-25). Plaintiffs bring this putative class action against Defendant for injuries sustained in treating ticks and fleas in their dogs with Bravecto. (*Id.* ¶ 28).[3]

"Defendant advertises and markets Bravecto directly to" Plaintiffs and consumers "nationally as a safe chewable tablet for dogs or a topical application that prevents and kills ticks and fleas for up to three months . . . ." (*Id.* ¶ 3). However, "[b]ecause of the method by which [Bravecto] kills insects," it "presents a risk of neurological toxicity" when ingested. (*Id.* ¶ 4). Defendant "failed to adequately disclose" the "significant risk of neurological toxicity" before Plaintiffs purchased Bravecto. (*Id.* ¶¶ 4-5).

Defendant knew of Bravecto's "adverse neurological risks" due to: (1) the way Bravecto is taken—Bravecto is "ingested or applied to animals and absorbed into their blood stream in order to penetrate nervous systems and cause death of insects[;]" and (2) consumer complaints— "consumers issued numerous complaints concerning neurological adverse reactions following use of Bravecto since it was released to the market in 2014" to 2018. (*Id.* ¶ 29). Despite this, Defendant "misrepresented Bravecto as a safe and effective flea and tick product" and thus, injuring Plaintiffs. (*Id.* ¶¶ 30, 53).

On December 27, 2019, Plaintiffs filed their initial complaint. (ECF No. 1). On February 28, 2020, Defendant moved to dismiss. (ECF No. 19). On July 2, 2020, Plaintiffs filed their first amended complaint alleging 10 claims. (ECF No. 31) (the "First Amended Complaint"). On August 18, 2020, Defendant moved to dismiss, and Plaintiffs opposed. (ECF Nos. 33-35).

---

[2] The following factual allegations are taken from the Third Amended Complaint, which are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).
[3] A more detailed background is provided in United States District Judge John Vazquez's (ret.) June 1, 2021 Opinion (ECF No. 41) (the "Vazquez Opinion").

On June 1, 2021, Judge Vazquez granted in part and denied in part Defendant's motion to dismiss. (*See* Vazquez Op.; Judge Vazquez's June 1, 2021 Order (ECF No. 42) ("Vazquez Order")). Judge Vazquez dismissed without prejudice: (i) Counts One and Two as time-barred as to Gordon; (ii) Counts Three, Nine, and Ten as subsumed under the New Jersey's Products Liability Act, N.J.S.A. 2A:58C-2, *et seq.* (the "Products Liability Act"); (iii) Count Four for Plaintiffs' failure to allege that their injury was caused by Defendant's misrepresentations and/or omissions; (iv) Counts Five and Six as time-barred; and (v) Count Eight because Plaintiffs neither alleged detrimental reliance nor that Defendant's actions or omissions were a substantial factor in injuring Reeves. (Vazquez Op. at 11-14, 21-23, 30-32, 37-39).[4]

On June 30, 2021, this matter was reassigned to this Court. (ECF No. 48). On July 1, 2021, Plaintiffs filed the Second Amended Complaint ("SAC") (ECF No. 49) alleging the following 12 claims as to all Plaintiffs: (1) breach of express warranty (Count One); (2) breach of implied warranty (Count Two); (3) violation of New Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2 (Count Three); (4) violation of the New Jersey Products Liability Act ("NJPLA") (Count Four); (5) violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42-110g, *et seq.*, as to Palmieri and Moraski ("CUTPA") (Count Five); (6) violation of Illinois' Consumer Fraud and Deceptive Business Practices Act ("IFCA"), 815 ILCS 505/1, *et seq.*, as to Gordon (Count Six); (7) violation of Illinois' Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1, *et seq.*, as to Gordon (Count Seven); (8) violation of New York's General Business Law ("NYGBL"), N.Y. Gen. Bus. Law §§ 349, *et seq.*, as to Tucker (Count Eight); (9) violation of Texas Deceptive Practices-Consumer Protection Act ("DTPA"), Texas Bus. & Com. Code §§ 17.41, *et seq.*, as to Reeves (Count Nine); (10) violation of Florida's

---

[4] The Court refers to the ECF page numbers.

Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203, as to Ippolito (Count Ten); (11) failure to warn (Count Eleven); and (12) unjust enrichment (Count Twelve).[5]

On September 2, 2021, Defendant filed a second motion to dismiss. (ECF No. 58). On October 21, 2021, Plaintiffs filed their opposition. (ECF No. 67). On November 18, 2021, Defendant replied. (ECF No. 72). On June 26, 2024, the Court dismissed Plaintiffs' Second Amended Complaint in its entirety without prejudice and permitted Plaintiff to file an amended complaint no later than 30 days of the Order. (ECF Nos. 129, 130).[6]

On August 15, 2024, Plaintiffs filed a Third Amended Complaint alleging the same twelve (12) causes of action as to all Plaintiffs.[7] (ECF No. 136).

On November 6, 2024, Defendant filed the instant motion to dismiss. (ECF No. 151). On December 13, 2024, Plaintiffs filed their opposition. (ECF No. 154). On January 13, 2025, Defendant replied. (ECF No. 155). Defendant's motion to dismiss is now ripe for consideration.

## II.  **LEGAL STANDARD**

### A.  **Rule 12(b)(6)**

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted).  On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).  A complaint will survive a motion

---

[5] The TAC mistakenly refers to the unjust enrichment claim as Count X.

[6] Plaintiffs requested an extension of the thirty (30) day deadline to file the TAC, which was granted by Magistrate Judge André M. Espinosa. (ECF Nos. 132, 133).

[7] Counts Five to Ten are alleged by individual Plaintiffs.

to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and

5

to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III.    DISCUSSION

### A. The Law of The Case Doctrine

As a threshold matter, Defendant asks the Court to revisit numerous holdings and findings from Judge Vasquez's prior opinion. (ECF. No. 41) (Def.'s Br. at 10 & n.6, 11-13, 20 & n.8, 21-24, 27-28, 31-32, 33-35). Defendant contends "[n]othing about the law of the case doctrine prevents this Court from deciding this motion to dismiss differently from how Judge Vasquez ruled on the motion to dismiss a prior complaint." (Def.'s Br. at 10 (citing *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017)).

The law of the case doctrine precludes review of legal issues previously decided. *See In re City of Phila. Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1998); *see also Hamilton v. Leavy*, 322 F. 3d 776, 786-87 (3d Cir. 2003) ("The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." (quoting *In re Continental Airlines*, 279 F. 3d 226, 232 (3d Cir. 2002))). The doctrine "only applies within the same case," *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010), and affects only issues that were "expressly" or "necessarily resolved" by prior decisions in the same case, *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020).

The doctrine is designed to "promote finality, consistency, and judicial economy." *Hamilton*, 322 F.3d at 787; *see also Petratos*, 855 F.3d at 493 (The law of the case doctrine is "a judicial rule of practice meant to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'") (citation omitted).

However, this doctrine "does not limit the power of trial judges to reconsider their prior decisions." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). In particular, "[i]nterlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case." *Petratos*, 855 F.3d at 493 (quoting *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)). While the doctrine "does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court . . . it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of [their] predecessors in a given case." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994); *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) ("The law of the case doctrine does not limit a federal court's power; rather, it directs its exercise of discretion."); *see also Messenger v. Anderson*, 225 U.S. 436, 444 (1912) ("[T]he phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.").

"It is well-established that a court must have directly addressed the contested issue in a prior opinion for the law of the case doctrine to apply." *Marina Group LLC v. Shirley May International US Inc.*, No. 21-18733, 2024 WL 3325993, at *4 (D.N.J. July 8, 2024) (collecting cases); *see also Waterfront Renaissance Assocs. v. City of Phila.*, 701. F. Supp. 2d 633, 639 (E.D. Pa. 2010) (stating that "[t]he law of the case doctrine applies 'to issues expressly decided by a court in prior rulings . . . .'") (quoting *Bolden v. Se. Pa. Transp. Auth.*, 21 F. 3d 29, 31 (3d Cir. 1994))).

Here, Defendant advances many of the same arguments in its present motion already squarely addressed by Judge Vasquez, including, *inter alia*, moving to dismiss Plaintiffs' express

warranty claim because "safe and proven safe" is not an actionable warranty, arguing Plaintiffs' implied warranty claim is subsumed by the NJPLA; asserting the doctrine of fraudulent concealment does not apply to Plaintiff Palmieri's CUTPA claim; contending Plaintiff Tucker has not alleged conduct "directed at consumers" under the NYGBL; maintains Plaintiff Reeves has failed to adequately plead detrimental reliance in her DTPA claim; and posits that the Court should strike Plaintiffs' class allegations. Consequently, the law of the case doctrine dictates against relitigating these issues.[8] *See Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, No. 18-00345, 2019 WL 3778756, *7 (W.D. Pa. Aug. 12, 2019) ("[T]he Court concludes that Judge Kelly's prior opinion and order as to Defendants' previous motion to dismiss constitutes the law of the case"); *Cf. Marina Group*, 2024 WL 3325993, at *4 ("The law of the case doctrine does not apply to this motion, as the Court did not address whether Plaintiff had adequately pled the elements of Counts II and III in its Opinion on the prior motion to dismiss the First Amended Complaint."); *Slater v. Marshall*, 906 F. Supp. 256, 259 (E.D. Pa. 1995) (holding that the law of the case doctrine did not preclude consideration of a motion to dismiss, even though the court had found that the complaint stated a claim when it ruled on prior motion to dismiss filed by another defendant, because the issues raised by the two defendants were different).

---

[8] Judge Vasquez held that Plaintiffs' unjust enrichment claim was subsumed by the NJPLA. (Vasquez Op. at 14). Defendant argues that besides subsumption, Plaintiffs' unjust enrichment claim fails for three reasons: (1) the claim sounds in tort, and New Jersey law does not recognize unjust enrichment as an independent tort action; (2) a direct relationship is required but not alleged; and (3) Plaintiffs do not allege they expected remuneration from Defendant at the time of their purchase. (Def.'s Br. at 17-19). Plaintiffs oppose, arguing their unjust enrichment claim is not subsumed by the NJPLA, and rebut Defendant's three arguments. (Pls.' Br. 12-13, 19-22). As with Judge Vasquez's other holdings, this Court declines to revisit whether Plaintiffs' unjust enrichment claim is subsumed. *Bedrosian v. IRS*, 42 F.4th 174, 181 (3d Cir. 2022) (The law of the case doctrine "prevents reconsideration of legal issues already decided in earlier stages of a case."). Indeed, Plaintiffs have not altered the allegations of their unjust enrichment claim. *Compare* (SAC ¶¶ 266-275), *with* (TAC ¶¶ 321-331). Thus, there is no basis for this Court to reconsider Judge Vasquez's holding that Plaintiffs' unjust enrichment claim is subsumed by the NJPLA. Accordingly, the Court does not address the merits of Plaintiffs' unjust enrichment claim. Likewise, the Court does not revisit Judge Vasquez's holding that Plaintiffs lacked standing for injunctive relief. (Vasquez Op. at 39-40).

Notwithstanding, even though the law of the case doctrine does not preclude this Court from revisiting prior rulings, the doctrine proscribes such revisitation in "extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *In re City of Phila. Litig.*, 158 F.3d at 718. Defendant has not set forth any extraordinary circumstances, thus, the Court adheres to the law of the case doctrine, which protects "traditional ideals such as finality, judicial economy[,] and jurisprudential integrity." *Id.* at 717-18; *see also In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig.*, No. 17-2779, 2019 WL 4957933, at *4 (D.N.J. Oct. 8, 2019) (denying defendant's request to reconsider an earlier decision denying a motion to dismiss plaintiff's unjust enrichment claim because none of the extraordinary circumstances applied). Moreover, the Court finds no independent basis to revisit Judge Vasquez's prior holdings. *See, e.g.*, *Nafar v. Hollywood Tanning Systems, Inc.*, 06-3826, 2010 WL 2674482, at *4 (D.N.J. June 30, 2010) (finding extraordinary circumstances existed and "that the Court must reconsider an issue that was previously decided in the course of this litigation" in light of numerous "cases [that] have been decided by the Supreme Court of New Jersey and the Appellate Division [which] compel a modification of this Court's previous decision with regard to whether the PLA subsumes certain claims asserted by Plaintiff.").

Accordingly, the Court will first address Plaintiffs' express warranty as it relates to "safe and proven safe" as an actionable warranty. Next, the Court will address whether Plaintiffs' NJCFA claim is subsumed under the NJPLA and if Plaintiffs adequately allege a NJCFA claim. The Court will then proceed to analyze whether Plaintiffs state a claim based on the various other consumer fraud statutes pled.

## B. Plaintiffs Plausibly Allege a Breach of Express Warranty Claim (Count One)

Defendant moves to dismiss Plaintiffs' express warranty claim because Plaintiffs do not allege that they read such warranty before their purchases and even if Plaintiffs had, it cannot support an express warranty claim as a matter of law. (Def.'s Br. at 8-11). Plaintiffs argue they adequately allege an express warranty claim and that Defendant's arguments have already been rejected by Judge Vasquez. (Pl.'s Br. at 8-11). The Court agrees with Plaintiffs.

To state a claim for breach of express warranty: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J. Stat. Ann.§ 12A:2-313). "As to the 'basis of the bargain' element, a plaintiff must allege that she 'read, heard, saw or knew of the advertisement containing the [express warranty]' when choosing to use the product." (ECF No. 41 at 17 (quoting *Metcalfe v. Biomet, Inc.*, No. 18- 456, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019) (citing *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992))).

Plaintiffs sufficiently allege an affirmation promise or description. The TAC states that "Defendant's central marketing theme for Bravecto, which is directed to consumers through advertising on television, online, and in print (including displays in veterinarian's offices), is that it is purportedly 'safe' and 'proven safe . . . .'" (TAC ¶ 91). Plaintiffs further allege they "viewed [Bravecto's] packaging and materials [and in Ippolito's case a television commercial] and the display featuring Bravecto in [their] veterinarian's office at the time of [their] purchase . . . ." (*Id.* at ¶¶ 23-26; 105). Plaintiffs further contend that Bravecto did not conform to the affirmation or

10

promise that it was "safe and effective," rather Plaintiffs allege their pets suffered from seizures and other neurological symptoms. (*Id.* at ¶¶ 23-26).

Defendant contends that the Third Circuit has held "safe and proven safe" is not an actionable warranty, citing *In re Avandia Mktg. Sales Practice & Prods. Liab. Litig.*, 588 Fed. Appx. 171 (3d Cir. 2014). However, Judge Vasquez previously found that "*Avandia* is distinguishable" and denied Defendant's motion to dismiss Plaintiffs' express warranty claim on such a basis. (Vazquez Op. at 18). Notwithstanding, Defendant asserts "[n]othing about the law of the case doctrine prevents this Court from deciding this motion to dismiss differently from how Judge Vasquez ruled on the motion to dismiss a prior complaint." (Def.'s Br. at 10 n.6). Even so, this Court's own interpretation of *Avandia* comports with Judge Vasquez—*Avandia* is distinguishable.

The Third Circuit stated "we conclude the statement that Avandia is 'safe and effective' for its intended use contained on its label disclosing contraindications, risk factors, and potential side effects of the drug is not sufficient as a matter of law to state a New Jersey express warranty claim . . . ." *In re Avandia*, 588 Fed. Appx. at 174. The *Avandia* Court's discussion of analogous sister States' express warranty statutes and jurisprudence underscored that courts "refused to find the words 'safe and effective' to create an express warranty *in the absence of representations that a drug was free from all harmful side effects or was absolutely harmless.*" *Id.* at 177 (emphasis added).

Contrary to Defendant's contention otherwise, Avandia's label and Bravecto's label are different. "The Avandia label disclose[d] contraindications, risk factors, and potential side effects of taking the drug, thereby warning it may not be safe under all circumstances for every person."

*Id.* at 173.[9] Conversely, the Bravecto label states the following: (1) ("There are no known contraindications for the use of the product"); (2) ("In a "well-controlled U.S. field study . . . there were no serious adverse reactions"); (3) ("In a margin safety study . . . there were no clinically-relevant, treatment-related effects"); and (4) (In a "reproductive safety . . . there were no clinically-relevant, treatment-related effects"). (TAC ¶¶ 103-105). These statements are the type of unqualified representations that the *Avandia* Court made clear were a necessary predicate to adequately alleging a breach of express warranty claim. Indeed, as Defendant points out, the Bravecto label contains an adverse reactions section—it explicitly states, "*there were no serious adverse reactions*" and the label further represented "[*t*]*here are no known contraindications for the use of the product.*" (*Id.* at ¶ 103) (emphasis added). In *Avandia*, the Court noted that Plaintiff "does not allege GSK made *unqualified* promises or affirmations of fact regarding Avandia." *In re Avandia*, 588 Fed. Appx. at 177 (emphasis added). However, here, Plaintiffs *do* allege Bravecto's label made unqualified promises or affirmations. (TAC ¶¶ 103-105). As Judge Vasquez succinctly stated, "Intervet's representations indicate that Bravecto is generally safe, save for a few 'non-serious side effects." (Vasquez Op. at 18). Thus, "safe and proven safe" is an actionable warranty when it is unaccompanied by any qualifying disclosures.

Accordingly, Count One survives.

### C. Plaintiffs' NJCFA Claim

#### i.     Whether Plaintiffs' NJCFA Claim is Subsumed Under The NJPLA

Defendant argues Plaintiffs' NJCFA claim is subsumed by the NJPLA, and that Plaintiffs fail to state a viable NJCFA claim. (Def.'s Br. 15-17). Plaintiffs oppose. (Pls.' Br. at 15-18).

---

[9] The *Avandia* Court noted the Avandia label "warned, among other things, that (1) Avandia could exacerbate congestive heart failure, (2) patients at risk for heart failure should be monitored, and (3) Avandia was contraindicated for patients with New York Heart Association Class III and IV cardiac status." *Avandia*, 588 Fed. Appx. at 173-74.

"The New Jersey Supreme Court has explained that '[t]he language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (first alteration in original) (quoting *In re Lead Paint Litig.*, 191 N.J. 405, 924 A.2d 484, 503 (N.J. 2007)).

The NJPLA's language represents "a clear legislative intent that . . . the [NJ]PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co.*, 195 N.J. 51, 948 A.2d 587, 596 (N.J. 2008); *see also Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (D.N.J. 2011) (citing *Sinclair*).

"As explained by the Third Circuit, the NJPLA 'effectively creates an exclusive statutory cause of action for claims falling within its purview.'" *Greisberg v. Bos. Sci. Corp.*, No. 19-12646, 2020 WL 278648, at *4 (D.N.J. Jan. 17, 2020) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)).

Recognizing the NJPLA's broad scope, "New Jersey federal and state courts have consistently dismissed product liability-related claims based on common law theories when at the heart of those theories is the potential 'harm caused by a product.'" *Hindermyer*, 419 F. Supp. 3d at 818 (citing cases). "In addition, courts have found that the NJPLA subsumes common law . . . claims so long as the harm alleged was caused by a product." *Id.* at 819 (citing cases).

"To determine whether the NJPLA subsumes a particular claim, the court must ascertain the type of harm that a plaintiff is alleging; namely, whether the harm involves property damage or bodily injury caused by the culprit product, or whether the harm was solely to the defective product itself." *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *4 (D.N.J. Aug. 8, 2017). Put another way, "courts do not simply determine whether or not the victim's injury

was literally 'caused by a product,'" but rather, "courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action." *New Hope Pipe Liners, LLC v. Composites One, LLC*, No. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009). "As such, regardless of how a claim is pleaded, where the core issue is the harmfulness of the product's chemicals, the claim must be pleaded as an NJPLA claim." *Arlandson*, 792 F. Sup. 2d at 703 (citing *Crouch v. Johnson & Johnson*, No. 09-2905, 2010 WL 1530152, at *7 (D.N.J. Apr. 15, 2010).

"However, when the essential nature of the claim is not that of a [NJ]PLA claim, the plaintiff may maintain a separate cause of action." *Guardavacarro*, 2017 WL 3393812, at *4 (internal quotation marks omitted) (quoting *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418 (D.N.J. 2016)).

In *Sun Chemical Corp. v. Fike Corp.*, the New Jersey Supreme Court considered "in response to a question of law certified by the United States Court of Appeals for the Third Circuit . . . whether 'a [CFA] claim [can] be based, in part or exclusively, on a claim that also might be actionable under the [PLA].'" 243 N.J. 319, 235 A.3d 145, 148 (N.J. 2020) (second alteration in original). The *Sun Chemical* plaintiff bought defendant's product to prevent potential explosions in its dust collection system. *Sun Chemical*, 235 A.3d at 149. When selling the product, the defendant made several affirmative misrepresentations, namely, that the product would in fact prevent explosions. *Id.* The product later malfunctioned, exploded, and caused personal injury and property damage. *Id.*

The NJCFA and the NJPLA "are remedial statutes that target different wrongs, address distinct types of harm, and provide for divergent remedies." *Id.* at 148. Specifically, the PLA "intended to protect users from harm caused by defective products" and "imposes liability upon

14

the manufacturer or seller for a product's 'manufacturing defects, warning defects, and design defects.'" *Id.* at 152-53. Compared to the [NJ]CFA, the "[NJ]PLA's reach is more limited." *Id.* at 148. The [NJ]CFA, on the other hand, "is to be expansively read to proscribe unconscionable business practices." *Id.* Indeed, "[i]n addition to its ever-growing scope, the language of the [NJ]CFA evinces a clear legislative intent that its provisions be applied broadly" and "[l]ike most remedial legislation, the [NJCFA] should be construed liberally in favor of consumers." *Id.* at 151 (cleaned up). "The measured application of [these] principles ha[ve] led to few, very limited exceptions to the [NJ]CFA's reach." *Id.* at 152 (citations omitted).

Critically, the New Jersey Supreme Court made clear that "nothing about the [NJ]PLA prohibits a claimant from seeking relief under the [NJ]CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product." *Id.* at 155. The court further noted:

> Indeed, the [NJ]CFA is expressly in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State. Said differently, if a claim is based on deceptive, fraudulent, misleading, and other unconscionable commercial practices, it is not covered by the [NJ]PLA and may be brought as a separate [NJ]CFA claim.

*Id.* (internal quotations omitted). The *Sun Chemical* Court underscored that "[NJ]PLA and [NJ]CFA claims may proceed in separate counts of the same suit, alleging different theories of liability and seeking dissimilar damages." *Id.* "[T]he presumptive application of the [NJ]CFA is overcome only if 'a direct and unavoidable conflict exists between application of the [NJ]CFA and application of the other regulatory scheme or schemes." *Id.*

The *Sun Chemical* Court further noted: "[i]t is the nature of the claims brought, and not the nature of the damages sought, that is dispositive of whether the PLA precludes the separate causes of action," *id.* at 148; and the Court held: "[i]f a claim is premised upon a product's manufacturing,

15

warning, or design defect, that claim must be brought under the PLA with damages limited to those available under that statute[,]" thereby precluding the CFA claims. *Id.* at 155. Thus, "if a claim is based on deceptive, fraudulent, misleading, and other unconscionable commercial practices, it is not covered by the PLA and may be brought as a separate CFA claim." *Id.*

Importantly, the *Sun Chemical* court also held "PLA and CFA claims may proceed in separate counts of the same suit," so long as they "alleg[e] different theories of liability and seek[] dissimilar damages." *Id.* The *Sun Chemical* court instructed that, to determine whether the purported claim pleads a separate count, a court must "determine whether the theory pled on the facts presented, although denoted [as a CFA claim] [i]s in fact one of the three codified theories made exclusively actionable under the PLA." If so, then the claim is "supplanted by the PLA" because "claims that sound in the type of products liability actions defined in the PLA must be brought under the PLA." *Id.*

Whether Plaintiffs' NJCFA claim is subsumed under the NJPLA is a close question.[10] *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 364663, *9 (D.N.J. Feb. 3, 2021)

---

[10] "Courts have historically dismissed common law and statutory fraud claims when the harm alleged was caused by a product." *In re Valsartan*, 2021 WL 364663, at *7 (collecting cases). *See, e.g., Hindermyer*, 419 F. Supp. 3d 809, 819 (D.N.J. 2019) ("[F]ederal and state courts in New Jersey routinely dismiss fraud claims on the basis of NJPLA subsumption, when a plaintiff purchases a defective product and sustains a personal injury, as a result of a manufacturer's "false representations" concerning that product's "safety and efficacy.") (collecting cases discussing fraud claims sounding in products liability that were subsumed by the PLA); *Brown*, 228 F. Supp. 2d at 516 (collecting cases); *Indian Brand Farms v. Novartis Crop Prot., Inc.*, 890 F. Supp. 2d 534, 548 (D.N.J. 2012) (finding plaintiff's fraud-based claims were subsumed by the NJPLA because they were based on facts that supported a failure to warn claim); *Nafar*, 2010 WL 2674482, at *11 (partially subsuming plaintiff's NJCFA claim—"based on the allegation that [d]efendant knew of dangers associated with its tanning beds, and failed to disclose them, must be considered "failure to warn" claims" but finding plaintiff's "claims premised upon misleading advertisements and/or representations made by employees at [d]efendant's franchises[] may potentially proceed under the CFA"); *Arlandson*, 792 F. Supp. 2d at 703 (finding plaintiffs NJCFA claim for "spot on" flea and tick product was subsumed under the NJPLA); *Walus v. Pfizer, Inc.*, 812 F. Supp. 41, 45 (D.N.J. 1993) (granting summary judgment on various claims including failure to warn, fraud, and misrepresentation. With regard to the fraud claim specifically, the Court concluded that the PLA subsumed that claim, noting that "New Jersey treats all product liability actions the same, regardless of the theory asserted. Plaintiffs cannot . . . recast[ ] their product liability claims as fraud claims."); *Sinclair v. Merck & Co.*, 948 A.2d 587 (2008) (subsuming statutory consumer fraud claim by the NJPLA when the "[t]he heart of plaintiff's case [was] the potential harm caused by Merck's drug); *McDarby v. Merck & Co.*, 949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) (subsuming statutory consumer fraud claim by the NJPLA because "the gravamen of [the] claim was that Merck marketed Vioxx fully aware of its cardiovascular risk [and] made misrepresentations[ ] and . . . omis[sions]" in

(noting that determining whether NJCFA claim was subsumed by NJPLA "presents a closer call."); *Nafar*, 2010 WL 2674482, at *8 ("[T]he line between consumer fraud and failure to warn (i.e., a sub-type of products liability) claims is not always a clear one.") (citation omitted); *Brown ex rel. Est. of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 516 (D.N.J. 2002) ("Whether the [NJ]PLA subsumes plaintiff's fraud claims is a closer question . . . ."). As discussed above, the New Jersey Supreme Court held that so long as each of the NJPLA claims and the NJCFA claims "alleg[e] different theories of liability and seek[ ] dissimilar damages," the CFA claim could proceed in the same action. *Sun Chemical*, 235 A.3d at 155.

Here, some of the allegations in the NJCFA claim could be construed as a representation-based claim—they are based on allegations that Defendant made assertions about the safety of Bravecto and that these assertions of safety induced Plaintiffs to purchase Bravecto. (*See* TAC ¶¶ 33-34 (alleging Defendant misrepresented side effects were mild, "[t]he most common side effects are mild and transient gastrointestinal effects . . . Defendant touted that its product caused consumers 'a lot less worry' than normal flea and tick medications . . . "[s]ide effects may include vomiting, decreased appetite, diarrhea, lethargy, excessive thirst and flatulence."); ¶¶ 50-51, 57, 68, 70-71, 78-79, 108-110 (alleging defendant tried to minimize consumer complaints of serious side effects, "While Defendant knew of these safety risks, it did not disclose them to consumers and their veterinarians. In contrast, it misrepresented Bravecto as a "safe" and "proven safe" flea and tick product"); ¶¶ 89-101 (alleging Defendant's marketing misrepresented safety of Bravecto, ¶ 92 marketing materials claim Bravecto is "FDA approved and proven safe for both dogs and cats for 12 weeks"), ¶ 97 (Defendant's website states that "[Bravecto] has a wide margin of safety in

---

connection with its marketing and that NJCFA claim for economic damages was based upon an alleged failure to warn of product's risks); *Lopienski v. Centocor, Inc.*, No. 07-4519, 2008 WL 2565065, at *1 n.2 (D.N.J. 25 Jun. 2008) (finding causes of action for negligent and fraudulent misrepresentation, statutory consumer fraud, and fraudulent concealment were subsumed because they were premised on physical injuries caused by a product).

dogs who weigh at least 4.4 lb"); *see also* ¶ 200 (These omissions are material in nature because they would impact whether an ordinary, reasonable consumer would purchase Defendant's product.); ¶ 226 ("Defendant represented that Bravecto was a safe flea and tick treatment without disclosing the risk of any serious adverse reactions."). These allegations are not subsumed under the NJPLA. *See Copeland v. Poliquin Performance Center 2, LLC*, No. 19-20278, 2021 WL 1207728, at *4 (D.N.J. Mar. 30, 2021) (finding in light of the New Jersey Supreme Court's decision in *Sun Chemical*, reconsideration of prior holding that NJCFA claim was subsumed under the NJPLA was warranted, and that plaintiff's NJCFA claim—based on express or affirmative representations—was not subsumed under the NJPLA); *Norton v. Mylan N.V.*, No. 22-01206, 2024 WL 1406644, at *2 (D.N.J. April 2, 2024) (holding "[p]laintiff's assert[ion] [that] [d]efendant affirmatively misrepresented the ingredient list on Geritol's labeling, and as a result of this incomplete ingredient list, 'plaintiff has been damaged and ha[s] sustained an ascertainable loss of money for the purchase of Geritol, . . . qualif[ies] these misrepresentations for coverage under the NJCFA, not the NJPLA."); *Kaplan v. General Electric Company*, No. 22-05296, 2023 WL 4288157, at *5 (D.N.J. June 30, 2023) ("Kaplan's claims for common law fraud, negligent misrepresentation, . . . are not subsumed by the NJPLA because the nature of the claims do not sound in products liability, but rather misrepresentations . . . Kaplan brings these claims not just on the premise that the Alarms were defective, but on the grounds that 'Defendants made material misrepresentations by advertising that the [Alarms] met UL and NFPA standards . . . when in fact they did not.'") *New Hope Pipe Liners*, 2009 WL 4282644, at *3 (finding representation based claims were not subsumed under the NJPLA);[11] *see also Nafar*, 2010 WL 2674482, at *11

---

[11] The Court's reasoning and conclusion is similar to that reached in *New Hope Pipe Liners*:

> Traditional products liability claims arise out of the situation where a product fails to perform as would ordinarily be expected in the absence of any specific promises made by the seller or

(partially subsuming plaintiff's NJCFA claim—"based on the allegation that [d]efendant knew of dangers associated with its tanning beds, and failed to disclose them, must be considered 'failure to warn' claims[,]" but finding plaintiff's "claims premised upon misleading advertisements and/or representations made by employees at [d]efendant's franchises[] may potentially proceed under the [NJ]CFA").[12]

However, other allegations in the NJCFA claim are properly construed as a failure to warn claim. (*See* TAC ¶ 19 ("By omitting and failing to disclose the dangers that Bravecto poses . . . Defendant defrauded Plaintiffs . . . deprived them of the benefit of their bargain . . . ."); ¶ 102 ("At no time during the time period relevant to this action did Defendant's Bravecto packaging provide adequate warning of possible adverse neurological reactions."); ¶ 103 ("Defendant's Bravecto packaging insert also omitted these risks . . . ."); ¶ 198 (alleging that "misrepresentations" include "fail[ure] to provide adequate warning"). These allegations are subsumed under the NJPLA. *See, e.g., Arlandson*, 792 F. Supp. 2d at 703 (finding plaintiffs NJCFA claim for "spot on" flea and tick product was subsumed under the NJPLA because "the issue underlying [p]laintiffs' claims is that

---

manufacturer. Representation-based claims, by contrast, deal with the situation where a product does not conform to specific representations made directly to the buyer. Since representation-based claims and products liability claims deal with two distinct categories of unlawful conduct rather than two different theories covering the same underlying conduct, the PLA does not subsume representation-based claims ... Since representation-based harms are distinct from product liability-type harms, the PLA does not subsume those claims.

2009 WL 4282644, at *3. *Accord. Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 552-56, 556 n.5 (D.N.J. 2013).

[12] The Court notes the Third Circuit's decision in *Sun Chemical Corporation v. Fike Corporation*, is also instructive. 981 F.3d 231, 237-238 (3d Cir. 2020) (holding a plaintiff's claim is not subsumed by the NJPLA where the plaintiff's claim was not premised on the product being defective, but rather the producer of that product breaching a promise that the product would have a certain feature). Specifically, the Third Circuit held that NJCFA claims regarding "the suppression system's compliance with FM 5700's pressure-sensor requirement, the training Fike would provide to Sun employees, and the system's lack of failures in the field" were based on "express or affirmative representations" properly pled under the NJCFA because "these claims are not premised on the allegation that something was wrong with the [suppression] system; rather, the "nature of the action" is that the system did not do what Fike promised" and that "specific 'affirmative misrepresentation' about a specific feature of the system—the audible alarm—and the system did not include that feature as promised" did not conflict with NJPLA, but that claim alleging misrepresentation regarding suppression system's ability to prevent explosion was subsumed under the NJPLA because the "'underlying theory of liability' is that the product did not work." *Sun Chemical*, 981 F.3d at 237-38.

the chemicals in [d]efendants' products are dangerous and caused physical damage to Plaintiffs' property, in the form of harm to their pets' health."); *Medford v. Eon Labs, Inc.*, No. 20-00412, 2021 WL 5204035, at *3 n.3 (D.N.J. Nov. 9, 2021) (dismissing the plaintiffs' consumer fraud claims "based on Amiodarone's warnings" because they were "subsumed by the NJPLA"); *Qasim v. Spectrum Brands Holdings, Inc.*, 21-18744, 2024 WL 4345153, at *4 (D.N.J. Sep. 30, 2024) (dismissing NJCFA claim as subsumed under NJPLA at summary judgment stage because plaintiffs "expressly acknowledge their 'claim is based upon the failure of the Product to contain adequate warnings or instructions.'"); *Gonzalez v. Apple Inc.*, No. 22-2617, 2022 WL 16922178, at *3 (D.N.J. Nov. 14, 2022) ([T]he NJPLA subsumes [p]laintiff's . . . [NJ]CFA claim[] . . . [p]laintiff's [NJ]CFA claim is based on allegations that [d]efendant 'knowingly concealed, suppressed, and/or omitted information regarding defective functioning and inherent danger' of the product purchased by [p]laintiff . . . These allegations fall under the claims covered by the NJPLA, namely, it is an allegation that [d]efendant 'failed to contain adequate warnings or instructions' for a defective product."); *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 824 (D.N.J. Feb. 10, 2021) (finding plaintiff's NJCFA claim based on alleged misrepresentation on defendant's website that defendant "'pride[s] [itself] in offering services and compounds that are prepared with the utmost integrity to the rules and regulations set forth by USP Chapter 797' because it knew that [p]laintiff's pharmaceuticals were not prepared in this manner and did not comply with these regulations" was subsumed under NJPLA because "it is axiomatic that they are premised on the product being defective[.]"). *See also Roncal v. Aurobindo Pharma USA, Inc.*, No. 20-02643, 2022 WL 1237888, at *4 (D.N.J. April 27, 2022) (finding plaintiffs' claims "are based on theories that they were harmed by the failure to provide a warning, the deficiency of product warnings and information in reference materials, and the failure to disclose adverse events related

20

to the product[]" and that since "each theory is predicated on a failure to warn" the claims were subsumed under the NJPLA).

Accordingly, Plaintiffs' NJCFA claim to the extent it alleges misrepresentations is not subsumed under the NJPLA.

### ii.     Plaintiffs Fail to Plausibly Allege a NJCFA Claim Based on Express Misrepresentations

The NJCFA "targets unlawful sales and advertising practices designed to induce customers to purchase merchandise or real estate." *Sun Chemical*, 981 F.3d at 236 (cleaned up). As such, the NJCFA prohibits:

> The act, use or employment by any person of any commercial practice that is unconscionable or . . . misrepresentation, or the knowing concealment, . . . or omission of any material fact with intent that others rely upon . . . in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A. 56:8-2. "Proof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462 (N.J. 1994).

To state an NJCFA claim, Plaintiffs must allege: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Francis E. Parker Mem'l Home Inc.*, 945 F. Supp. 2d at 558 (citation omitted). The NJCFA "does not require proof that a consumer has actually relied on a prohibited act in order to recover." *Int'l Union Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 929 A.2d 1076, 1087 (2007).

"Claims under the [NJ]CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010)

(citations omitted). However, "courts have relaxed [Rule 9(b)] when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). In such circumstances, "pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id.* "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged." *Maniscalco v. Brother Int'l. Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009).

Unlawful conduct means "affirmative acts and knowing omissions," as well as "violations of regulations promulgated under" the CFA. *Francis E. Parker Mem'l Home Inc.*, 945 F. Supp. 2d at 558 (citations omitted). "[C]ourts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (citing *Frederico*, 507 F.3d at 202).

To state a NJCFA claim based on an affirmative act, the plaintiff need not show the defendant intended to deceive. *Cox*, 647 A.2d at 462. However, when a NJCFA claim is based on an omission, the plaintiff must show some form of intent on part of the defendant. *See Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 426 (D.N.J. 2015) (explaining that "an omission or failure to disclose a material fact, if accompanied by knowledge and intent" is actionable under the NJCFA); *Cox*, 647 A.2d at 462 ("[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud."). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand v. Brothers Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009).

"The CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.'" *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 872 A.2d 783, 792 (N.J. 2005)). "The New Jersey Supreme Court has instructed, 'To give effect to the legislative language describing the requisite loss for private standing under the CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'" *Id.* (citing *Thiedemann*, 872 A.2d at 792). "The certainty implicit in the concept of an ascertainable loss is that it is quantifiable or measurable, and in order to raise a genuine dispute, the plaintiff must proffer evidence of loss that is not hypothetical or illusory." *Id.* (quotation marks omitted) (citing *Thiedemann*, 872 A.2d at 792). "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." *Thiedemann*, 872 A.2d at 792.

Allegations that a product is worth less because of a defect satisfies the ascertainable loss element because such a loss is quantifiable. *See Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 WL 7042071, at *6 (D.N.J. Dec. 1, 2016) (finding the plaintiffs adequately pled ascertainable loss because they alleged that the purchased vehicles are worth less as a result of the vehicles' purported defects); *Marcus v. BMW of N. Am.*, No. 08-5859, 2010 WL 4853308, at *11 (D.N.J. Nov. 19, 2010) (finding ascertainable loss adequately pled where the plaintiffs "got less than what they expected"), *rev'd on other grounds*, *Marcus v. BMW of North Am.*, 687 F.3d 583 (3d Cir. 2012).

The TAC alleges Defendant misrepresented the safety of Bravecto and knowingly omitted material facts about the risk of neurological side-effects. (TAC ¶¶ 89-105). However, Plaintiffs still have not pled *with particularity* facts that demonstrate Defendant made affirmative

23

misrepresentations concerning Bravecto. *See Francis E. Parker Mem'l Home, Inc.*, 945 F. Supp. 2d at 558 ("[T]o satisfy the specificity requirement of Fed. R. Civ. P. 9(b) the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss.") (cleaned up); *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (Plaintiffs must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged and plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.") (cleaned up).[13] While Plaintiffs identify the form of some alleged statements they saw or heard before their Bravecto purchases, such as displays in veterinarian offices, a television commercial, or flyers, Plaintiffs do not identify the content of each statement they individually read or heard. (TAC ¶¶ 23- 28). *See Grisafi v. Sony Elecs. Inc.*, 2020 WL 7074725, *3 (D.N.J. Mar. 5, 2020) (finding plaintiff's new allegations in his amended complaint failed to plead an affirmative misrepresentation. "Plaintiff now asserts that he read 'articles [ ] on the internet . . . however, does not identify which articles to which he is referring, . . . [a]gain, however, Plaintiff does not identify the articles to which he is referring, nor any statement by [d]efendant . . . ."); *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, *13 (D.N.J. July 21, 2011) ("Plaintiffs merely allege that Panasonic made such a

---

[13] A relaxation of Rule 9(b) is not warranted. Plaintiffs have not plead that the necessary information lies within defendants' exclusive control as to the NJCFA claim. (TAC ¶¶ 195-206). In contrast, Plaintiff Reeves and the Texas subclass allege, "Consumers, including Plaintiff and Texas Subclass members, lacked knowledge about the business practices, omissions, and misrepresentations because this information was known exclusively by Defendant." (TAC ¶ 279). Plaintiff Ippolito and the Florida subclass likewise allege exclusivity of knowledge by Defendant. (TAC ¶ 299). Additionally, Plaintiffs have had the benefit of extensive discovery and expressly state that many of the new allegations included in the TAC were added to bolster Plaintiffs' NJCFA claim. (*See* Pls.' Br. at 5 (The parties have spent hundreds of hours producing and reviewing documents, participating in discovery, and sitting for depositions . . . .")); (*id.* at 6 ("This fact, learned in discovery, directly relates to numerous causes of action, including the New Jersey Consumer Fraud Act . . . .")); (*Id.* at 17 "Many of the new allegations of which [Defendant] complains . . . demonstrate [Defendant's] elaborate scheme to avoid disclosing known side effects of the drug . . . .")).

[misrepresentation] in its advertising, knowing that such a misrepresentation would be favorably received by industry experts and consumers . . . While plaintiffs cannot be expected to plead facts solely within Panasonic's knowledge or control, plaintiffs should be able to allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it was so advertised."); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008) (dismissing misrepresentation based NJCFA claim because "[w]ith regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made or at what point-if ever-each Plaintiff was exposed to one or more of the statements"); *Torres–Hernandez v. CVT Prepaid Solutions*, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008) (finding that the defendant's alleged fraudulent misrepresentations fail to supply "the what, where, and when," and thus, they are insufficient to sustain the NJCFA claim).

Accordingly, Count Three is dismissed without prejudice.[14]

### D. Plaintiffs Adequately Allege a CUTPA Claim

Defendant moves to dismiss Plaintiffs' CUTPA claim because neither Plaintiff Palmieri or Moraski alleges that they read "safe" or "proven safe" on Defendant's website prior to purchase. (Def.'s Br. at 19-20). Plaintiffs oppose. (Pls.' Br. at 22-24). The Court agrees with Plaintiffs.

The CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.

"To state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair

---

[14] The Court does not address Plaintiffs NJCFA omission allegations because as discussed above, they are subsumed under the NJPLA.

or deceptive act in the conduct of any trade or commerce." *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016), *aff'd*, 666 Fed. App'x 84 (2d Cir. 2016).

"The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 947 A.2d 320, 329-30 (2008) (internal quotation marks omitted). The ascertainable loss requirement does not, however, limit CUTPA to "providing redress only for consumers who can put a precise dollars and cents figure on their loss." *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 816 (1981).

"A loss need not be significant to be ascertainable." *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 133 (D. Conn. 2024). Under CUTPA, "the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 276 (D. Conn. 2017) (citation omitted); *Hinchliffe*, 440 A.2d at 815 ("CUTPA provides an action more flexible and a remedy more complete than did the common law.").

To state a claim under CUTPA, a plaintiff must "establish both that the defendant has engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury." *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 692 A.2d 709, 712 (1997) (citation omitted) (emphasis in original). "The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." *Id.* "[M]ere 'but for' causation is not sufficient to support a CUTPA claim." *Id.* However, causation does not require reliance. *See Meyers v. Cornwell Quality Tools, Inc.*, 41 Conn. App. 19, 674 A.2d 444, 453 (1996) ("It is well established

that '[t]he CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain.'" (quoting *Associated Inv. Co. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 645 A.2d 505, 510 (1994))).

Here, Plaintiffs have alleged an ascertainable loss in the form of a discrepancy between the product they believed they purchased and the product they, in fact, received. *See, e.g., Davis*, 727 F. Supp. 3d at 133 (finding plaintiffs plead ascertainable loss by alleging discrepancy between what they believed they purchased and purchased product); *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 280 (D. Conn. 2007) (holding that "[c]ertain language in Connecticut case law may suggest that CUTPA's ascertainable loss requirement is satisfied simply by a deprivation of the benefit of plaintiff's bargain"); *Hinchliffe*, 440 A.2d at 814 ("Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known.").

Contrary to Defendant's contention otherwise, the TAC is not limited to Plaintiffs' "safe" and "proven safe" allegation as it relates to the CUTPA claim. Indeed, the TAC now includes Plaintiff Palmieri's Bravecto packaging. (TAC ¶ 124). Additionally, Plaintiffs allege that "Defendant's central marketing theme" depicted Bravecto as safe without disclosing the risk of neurological adverse reactions (TAC ¶ 91), and that Defendant minimized consumer complaints, compensated consumers, and engaged in marketing tactics to "rebut concerns that Bravecto caused neurological adverse events." (*Id.* at ¶¶ 65-74, 139).[15] Plaintiffs further allege that Defendant's

---

[15] "Indeed, Connecticut courts have generally been reluctant to resolve cases involving allegedly deceptive advertising at the motion to dismiss stage, given that it is difficult to determine, as a matter of law, how a reasonable consumer might interpret a given phrase." *Davis*, 727 F. Supp. 3d at 135 (citing *Langan v. Johnson & Johnson Consumer Cos.*, Inc., 95 F. Supp. 3d 284, 289 (D. Conn. 2015) ("Whether the phrases on defendant's sunscreen packaging are deceptive is a question of fact that is not readily susceptible to resolution on a motion to dismiss."); *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 990 A.2d 326, 337 (2010) ("It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier[.]")).

packaging now includes a visible warning related to the potential for adverse neurological events. (*Id.* at ¶ 124). Moreover, Plaintiffs Palmieri and Moraski allege that they both viewed the Bravecto packaging, materials, and displays prior to purchase. (*Id.* at ¶¶ 23, 26).[16] Plaintiff Palmieri asked her veterinarian about Bravecto's safety and was advised by her veterinarian Bravecto was safe. (*Id.* at ¶ 26). These allegations did not appear in the First Amended Complaint. (FAC ¶¶ 17, 19, ECF No. 31).

"[A]t this stage, 'the [c]ourt need not and should not determine as a matter of law whether [the defendant's] conduct, as alleged, actually violated CUTPA. Instead, the proper inquiry is whether [the plaintiff] has alleged sufficient facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim.'" *Davis*, 727 F. Supp. 3d at 135 (alterations in the original) (citing *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp.3d 132, 142 (D. Conn. 2015) (cleaned up)).

Accordingly, Plaintiffs have pled facts sufficient support a claim under CUTPA on behalf of the Connecticut subclass. Count Five survives.

### E. FUDPTA

Defendant asserts the FUDPTA does not apply to Plaintiff Ippolito's claim because it does not apply to a claim for . . . [personal injuries or] damage to property other than the property that is the subject of the consumer transaction." (Def.'s Br. at 23 (citing Fla. Stat. § 501.212(3); *T.W.M. v. American Medical Sys.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing FDUTPA claim for personal injuries)). Defendant further asserts that Plaintiff Ippolito has not alleged a deceptive act

---

[16] "It is well-established that CUTPA claims in federal court need not meet the heightened pleading standards of Rule 9(b)." *Davis*, 727 F. Supp. 3d at 134 (citing *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) ("It is well established that CUTPA claims need not contain the elements of fraud."); *Associated Inv. Co. Ltd. P'ship*, 645 A.2d at 510)).

because she does not allege she read "safe" or "proven safe" prior to purchase. (*Id.* at 24). The Court disagrees.

FUDPTA applies to Plaintiff Ippolito's claim. *Davis v. Main Street Family Pharmacy, LLC*, 2016 WL 9051172, at *1-2 (N.D. Fla. May 19, 2016) (economic damages under FDUPTA where plaintiff alleged a worthless steroid injection that also caused physical harm); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1340-41 (S.D. Fla. 2009) (finding valid FDUTPA claim based on false advertisements for chewing gum); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. 2d DCA 1997) (noting that FDUTPA provides for recovery of "economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts.").

To establish a FDUPTA violation, a plaintiff must prove three elements: (1) "a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016); *see also Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 340 (D.N.J. 2014) (citation omitted).[17]

Courts use an objective test to determine whether an act is deceptive under FDUTPA, and the plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo*, 823 F.3d at 983-84 (quoting *State, Office of the Att'y Gen. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)). "A party

---

[17] "Federal district courts are split as to whether FDUTPA claims are analyzed under Rule 9(b)." *In re FTX Cryptocurrency Exchange Collapse Litig.*, --- F. Supp. 3d ---, 2025 WL 1341173, at *13 (S.D. Fla. May 7, 2025) (citation omitted). While a FDUTPA claim is not necessarily a fraud claim, and thus, not always subject to the heightened pleading standard of Rule 9(b), Plaintiff Ippolito's FDUTPA claim does sound in fraud, consequently, the Court will apply the heightened pleading standard. *See, e.g., Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826, 833 (D.N.J. 2013) (collecting cases and applying heightened Rule 9(b) standard to a FDUTPA sounding in fraud); *In re FTX Cryptocurrency Exchange Collapse Litig.*, 2025 WL 1341173, at *13 (applying Rule 9(b) to FDUTPA claim sounding in fraud); *State Farm Mutual Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 17-20028, 2017 WL 4270620, *15 (S.D. Fla. 2017) ("Federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b) . . . However, where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) applies.").

asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Id.* at 984 (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)); *see also Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1311 (11th Cir. 2023).

To establish an unfair practice, the plaintiff must show that it is one that "offends established public policy" and one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 489 (Fla. Dist. Ct. App. 2001)).

"[T]he Florida Supreme Court teaches that a deceptive act occurs when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011) (cleaned up). Plaintiff Ippolito alleges a deceptive act; she alleges that Defendant misrepresented Bravecto as safe in a television commercial and that Bravecto's packaging omitted any warning about adverse neurological reactions. (TAC ¶ 25). Viewing such an advertisement objectively, "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo*, 823 F.3d at 983-84 (citation omitted); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (holding that the element of causation is met when the alleged misrepresentations would have deceived an objectively reasonable person.); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) ("[A] deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.") (citations and quotations omitted). Additionally, contrary to Defendant's assertion, Ippolito alleges she viewed the Bravecto commercial and packaging prior to purchasing Bravecto. (TAC ¶ 25 ("Ms. Ippolito

viewed Defendant's television commercial about Bravecto and the packaging of Bravecto and discussed the products with her veterinarian specifically asking if it had any potential side effects *prior to her purchase.*)) (emphasis added).

Moreover, Defendant's reliance on *Guerrero v. Target Corp.*, is distinguishable. In *Guerrero*, "Plaintiff's FDUTPA claim [was] premised on the fact that the honey sold by [d]efendant did not contain pollen as required by Florida's Honey Standard. 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012). However, "[t]he [c]omplaint fail[ed] to provide any more specific details regarding how [p]laintiff kn[e]w[] that [d]efendant's honey did not contain pollen." *Id.* In contrast, here, Plaintiffs allege a significant amount of information, which taken as true, demonstrates their basis for averring Bravecto caused neurological issues, and that Defendant despite being aware of this, omitted such risk from its warning. (*See, e.g.*, TAC ¶¶ 89-105, 290-299).

As Florida courts have noted, the causation element requires "that an objective[ly] reasonable person would have been deceived." *Fitzpatrick*, 635 F.3d at 1283. Plaintiff Ippolito adequately pleads causation—but for Defendant's Bravecto misrepresentation and omission regarding adverse neurological risks she "would not have given the Bravecto product to her pet, or would have paid significantly less for it, if Defendant had disclosed such risks." (TAC ¶ 25; *see also* TAC ¶ 300 (she "would not have purchased Bravecto or paid as much as [she] did for it.")). *Vazquez v. General Motors, LLC*, 17-22209, 2018 WL 447644, at *7 (S.D. Fla. Jan. 16, 2018) (actual reliance is not required under FDUTPA and rejecting argument that Plaintiffs fail[ed] to plead causation because they fail[ed] to allege that they actually saw the allegedly deceptive advertisements and that seeing the advertisements caused them to purchase their vehicles."); *Carriuolo*, 823 F.3d at 985-86. *Cf. Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (without evidence that plaintiff would not have been injured but for defendant's acts,

plaintiff "has failed to present sufficient evidence of causation . . . to prove a claim under FDUTPA."); *Pop v. Lulifama.com LLC*, 22-2698, 2023 WL 4661977, at *3 (M.D. Fla. July 20, 2023) (finding plaintiff failed to plead causation where he failed to allege posts that led him to purchase product, and because he did not allege with particularity whether he viewed the alleged misrepresentations before purchasing the allegedly defective products.); *Ferrara v. LCS Fin. Servs. Corp.*, No. 14-2450, 2015 WL 84703, at *3 (M.D. Fla. Jan. 7, 2015) ("[T]he Complaint does not contain any allegations regarding how [defendant's] statements were misleading, nor does it contain allegations of causation connecting [defendant's] actions to any alleged damages. Accordingly, [plaintiff] has not sufficiently plead all elements of a FDUPTA claim.").

Under the FDUTPA, actual damages "are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Carriuolo*, 823 F.3d at 986 (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). A plaintiff, however, cannot state a cause of action under FDUTPA if the consumer fails to plead that they suffered actual damages. *Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (holding that plaintiff failed to state a cause of action under FDUTPA as she suffered no actual damages and affirming dismissal of complaint with prejudice). Plaintiff Ippolito alleges she overpaid for Bravecto and thus, pleads actual damages. (TAC ¶¶ 25, 300).

At this juncture, these allegations satisfy Rule 9(b) and plausibly allege a FDUTPA claim. *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1333 (S.D. Fla. 2013) ("Plaintiffs' allegations . . . that they would not have purchased the products but for WhiteWave's misrepresentations, . . . that they were damaged in the amount of

the difference between the premium price paid for the DHA-fortified milk products and the price they would have paid for other milk products are sufficient to allege causation and damages under the FDUTPA."); *Harris v. Nordyne, LLC*, No. 14-21884, 2014 WL 12516076, at *7 (S.D. Fla. Nov. 14, 2014) ("Plaintiffs allege that when class members bought their HVAC systems, they reasonably believed that they would function as intended; that Defendant concealed the corrosion defect that preluded that functionality; and that, had the class members known about the defect, they would not have purchased or would have paid less for the systems. A FDUTPA claim is properly stated under those conditions."); *Matthews v. Am. Honda Motor Co.*, No. 12-60630, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value.").

Accordingly, Count Ten survives.

**F.  ICFA and IUDTPA**

**i.  ICFA**

The ICFA, "protect[s] consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)).

To state a claim under the ICFA, a plaintiff must allege: "(1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024).

Plaintiff Gordon merely alleges that she "viewed Defendant's packaging and materials and the display featuring Bravecto in her veterinarian's office. . . that represented the products as safe and effective flea and tick mediation and . . . did not disclose any risk of neurological adverse reactions." (TAC ¶ 24). This allegation lacks the heightened particularity required under Rule 9(b).[18] *See Camasta*, 761 F.3d at 736-737 (finding plaintiff failed to satisfy Rule 9(b); "[w]e do not require that Camasta provide the precise date, time, and location that he saw the advertisement or every word that was included on it, but something more than Camasta's assertion that "merchandise was offered at 'sale prices'" is needed."); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) (dismissing ICFA claim because allegations were "generalized" and did not identify *inter alia*, the content of the misrepresentation, which failed to satisfy Rule 9(b)); *McCabe v. Ford Motor Co.*, ---- F. Supp. 3d ----, 2025 WL 953064, at *32 (D. Mass. 2025) (dismissing ICFA claim, stating, "As in *O'Connor*, '[h]ere, [p]laintiff[s] do[ ] not identify any particular direct statements from defendant that contain material omissions . . . [; and] [f]or that reason, [p]laintiff[s] also fail[ ] to state an ICFA claim based on a 'material omission' theory.") (citing *O'Connor*, 477 F. Supp. 3d at 720); see also *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing ICFA claim where plaintiff's complaint was "replete with allegations recounting vague, nonspecific statements made by 'Defendants about Anatabloc's supposed benefits" but failed to identify "a single actual misrepresentation that was communicated to Plaintiff, much less which Defendant made it"); *cf. Davis*, 727 F. Supp. 3d at 150 (finding plaintiffs' ICFA claim satisfied Rule 9(b) because "Plaintiffs have clearly indicated which labeling

---

[18] "Complaints alleging deceptive practices in violation of the ICFA must be pled with sufficient particularity under Fed. R. Civ. P. 9(b)[.]" *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 754 (N.D. Ill. 2012); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) ("If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud."); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

statements they are challenging, as well as the circumstances under which each Plaintiff viewed the statements and relied on them when purchasing the refill products."); *Vanzant*, 934 F.3d at 739 (reversing dismissal of plaintiffs ICFA claim on particularity grounds and finding plaintiffs plead ICFA deceptive practice claim with particularity where plaintiffs saw "the specific 'prescription' [diet] language" for cat food at the time of purchase).

Accordingly, Count Six is dismissed without prejudice.[19]

### ii.    IUDTPA

Defendant argues Plaintiff Gordon's request for injunctive relief pursuant to the IUDTPA should be dismissed because she fails to allege future harm. (Def.'s Br. at 30). Plaintiff Gordon does not appear to respond to this argument. (Pls.' Br. at 32-33). The Court agrees with Defendant.

"The IUDTPA only allows consumers to sue for injunctive relief, and to state a claim under that Act, plaintiffs must allege a likelihood of future harm[.]" *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 961 (N.D. Ill. 2016). Put another way, the IUDTPA applies only to persons likely to be damaged by the deceptive trade practice of another. *Id.*

Since Plaintiff Gordon is now aware of Bravecto's risk of seizures she is not likely to be harmed by such misrepresentation in the future; additionally, the TAC acknowledges Bravecto's label and website now discloses such risk. (TAC ¶¶ 24, 124-26). *See Neubauer v. Continental Mills, Inc.*, No. 24-01160, 2025 WL 870139, at *8 (S.D. Ill. March 20, 2025) (dismissing IUDTPA claim because plaintiff "is now aware of alleged deception . . . she is not likely to be harmed by such misrepresentation in the future." (citing *Camasta*, 761 F.3d at 740 ("However, past exposure

---

[19] Under the ICFA, "deceptive conduct is distinct from unfair conduct." *Vanzant*, 934 F.3d at 738. "A claim under the Consumer Fraud Act may be premised on either (or both), but the two categories have different pleading standards." While a claim based on deceptive conduct is subject to Rule 9(b), an unfair practice claim is not. *Id.* (citing *Siegel*, 612 F.3d at 935). The Court only analyzes Plaintiff Gordon's claim under deceptive conduct because the relevant allegations relate to Defendant's misrepresentation that Bravecto was safe. (TAC ¶¶ 233-45). However, Plaintiffs' TAC states "unfair or deceptive acts" as well as "deceptive and unfair acts." *Compare (id.* at 240) *with*, *(Id.* at 241-42). Accordingly, it is unclear if Plaintiffs seek to bring an unfair conduct ICFA claim.

to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.")).

Accordingly, Count Seven is dismissed with prejudice.

## G. DTPA

Defendant argues Plaintiff Reeves' DTPA claim should be dismissed for failure to plead reliance on any alleged fraudulent statement by Defendant. (Def.'s Br. at 30-31). Plaintiffs oppose. (Pls.' Br. at 33-35).

The Texas DTPA "shall be liberally construed and applied to promote its underlying purposes," which include "protect[ing] consumers against false, misleading, or deceptive business practices." Tex. Bus. & Com. Code Ann. § 17.44(a).

To state a claim under the DTPA, a plaintiff must allege: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages." *In re Frazin*, 732 F.3d 313, 323 (5th Cir. 2013) (quotation omitted).

Courts have also interpreted the Texas DTPA as containing a reliance element when misrepresentation is alleged. *Wu v. Lumber Liquidators, Inc.*, No. 20-00765, 2024 WL 3160554, at *15 (Tex. App. June 25, 2024).

### i.  Section 17.50(a)(1), False, Misleading, or Deceptive Act or Practice

Plaintiff Reeves alleges she viewed "Bravecto's packaging and materials and the display featuring Bravecto in her veterinarian's office that represented the products as safe and effective . . . ." (TAC ¶ 27). As with several of the other consumer fraud statutes, such an allegation fails to satisfy the particularity requirement of Rule 9(b).[20] *See Okeke v. Auto. Fin. Corp.*, No. 15-00694,

---

[20] The Court notes Texas courts are split as to whether Rule 9(b) applies to the DTPA. *Bauer v. AGCO Corp.*, --- F. Supp. 3d ---, 2025 WL 762162, at *4 n.1 (W.D. Tex. March 10, 2025) ("The [c]ourt recognizes this area of the law is

2016 WL 11582509, at *11 ("Okeke has failed to identify which statements constitute the misrepresentations complained of, or anything with respect to the content of these misrepresentations."); *Cf. Kumar v. Panera Bread Co.*, 750 F. Supp. 3d 785, 790 (S.D. Tex. 2024) (finding statement from Panera employee that "the broccoli cheddar soup did not contain chicken broth or meat and that it was made fresh daily[]" satisfied Rule 9(b)).

Additionally, it does not appear that the TAC cures Judge Vasquez's noted deficiency that Plaintiff Reeves "allege that she relied on Intervet's alleged misrepresentations in deciding whether to purchase Bravecto at the price she paid." (Vasquez Op. at 38).[21]

### ii.    Section 17.50(a)(3), Unconscionable Action

To plead a cause of action for unconscionable acts under the DTPA, a plaintiff must allege that the defendant engaged in an "unconscionable action or course of action" that was "a producing cause of economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50(a). The DTPA defines an unconscionable action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). "The term 'gross' should be given its ordinary meaning, and therefore, the resulting unfairness must be glaringly noticeable, flagrant, complete and unmitigated." *Kumar*, 750 F. Supp. 3d at 792 (citation omitted). "Case law uniformly holds . . . [that] the unconscionable-act-or-course-of-action element of a DTPA section

---

somewhat unclear and district courts disagree on when Rule 9(b) applies to the DTPA . . . ."); *Compass Bank v. Vey Fin., LLC*, No. 10-00173, 2011 WL 3666608, at *3 n.4 (W.D. Tex. Apr. 29, 2011) (discussing split and citing cases). However, determining whether Rule 9(b) applies is based on whether the DTPA claim(s) are based on the same facts as the underlying fraud claim(s). *Okeke*, 2016 WL 11582509, at *11 ("[I]t rests on whether plaintiff's DTPA claims are based on the same facts as the underlying fraud claims."); *see also id.* (finding four misrepresentation and failure to disclose claims subject to Rule 9(b)); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("It is well-established that claims alleging violations of the DTPA are subject to the requirements of Rule 9(b).") (cleaned up).

[21] Plaintiffs brief focuses exclusively on Plaintiff Reeves' 17.50(a)(3) claim. (Pls.' Br. at 33-34). It is unclear whether Plaintiffs still intend to bring a 17.50(a)(1) claim or abandon this claim. (*Id.*). For clarity, the Court analyzed the sufficiency of Plaintiffs' DTPA 17.50(a)(1) claim.

17.50 unconscionability claim requires proof of each consumer's knowledge, ability, experience, or capacity." *Id.* (citation omitted). See also *Huynh v. Walmart, Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) ("The Texas Supreme Court has held that '[t]o prove an unconscionable action or course of action, a plaintiff must show that the defendant's act took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'") (cleaned up) (alteration in the original).

Notwithstanding Plaintiffs' 17.50(a)(1) claim, Plaintiff Reeves has cured Judge Vasquez's identified detrimental reliance deficiency. (Vasquez Op. at 38-39) (*See* TAC ¶ 27 ("These representations about Bravecto and the absence of any warning about neurological adverse reactions were a substantial factor in her decision to purchase Bravecto and pay the price she paid for it."); *see also* ¶ 221 ("Plaintiff and Texas Subclass Members acted reasonably in relying on Intervet's misrepresentations and omissions, the truth of which they could not have discovered. Intervet's misrepresentations and omissions were a substantial factor in Plaintiff and the Texas Subclass Members' decision to purchase Bravecto at the price they did.")). *See Kumar*, 750 F. Supp. 3d at 791; *Danny Darby Real Estate, Inc. v. Jacobs*, 760 S.W.2d 711, 716 (Tex. App.—Dallas 1988, writ denied) ("[A]bsent Realtor's incorrect representations that the property was eligible for Board financing, Buyer would not have entered into a contract to purchase the property, nor would he have made the improvements which he subsequently lost."). Thus, Plaintiff Reeves' DTPA 17.50(a)(3) claim survives.

Accordingly, Count Nine is dismissed in part without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 151) is **GRANTED IN PART**. Counts Three, Six, and Nine (in part, as to Plaintiff Reeves' DTPA

17.50(a)(1) claim) are **DISMISSED without prejudice.** Count Seven is **DISMISSED with prejudice,** with respect to Plaintiff Gordon's request for injunctive relief pursuant to the IUDTPA. All other claims for relief are **DENIED.** An appropriate Order accompanies this Opinion.

DATED: June 30, 2025

**JULIEN XAVIER NEALS**
United States District Judge